580 So.2d 1221 (1991)
John P. SMITH
v.
STATE of Mississippi.
No. 90-KA-0089.
Supreme Court of Mississippi.
May 3, 1991.
George T. Holmes, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:

I.
John P. Smith, an inmate presently incarcerated in the Mississippi State Penitentiary at Parchman, appeals from an order issued by the Circuit Court of Hinds County, Hon. Fred L. Banks, Jr. presiding, on the 13th of December, 1989, denying his motion for post-conviction relief.
Smith articulates the following issues:

*1222 1) "Whether the appellant is entitled to due process of law in being removed from the Mississippi Department of Corrections' Regimented Inmate Discipline Program within the 180 day period of `shock probation' under MCA § 47-7-47 (Supp. 1989)."
2) "Whether appellant was deprived of due process by being removed from the R.I.D. Program without a hearing."

II.
Smith is a Parchman prisoner as a result of convictions via guilty pleas entered in Hinds, Yazoo, and Humphreys Counties.
On July 29, 1988, Smith entered pleas of guilty in the Circuit Court of Yazoo County to two charges of house burglary. On each conviction he was sentenced to a term of ten (10) years
"... in the custody of the Miss.Dept. of Corrections under the terms and conditions of Miss. Code Ann., Sec. 47-7-47 (shock probation) specifically including successful completion of the R.I.D. program ..."
On the same date, he entered a plea of guilty in the Circuit Court of the First Judicial District of Hinds County to a charge of unlawful possession of pentazocine and was sentenced to a term of three (3) years
"... in the custody of the Miss.Dept. of Corrections under the terms and conditions of Miss. Code Ann., Sec. 47-7-47 (shock probation) specifically including successful completion of the R.I.D. program ..."
Finally, on August 2, 1988, Smith entered a plea of guilty in the Circuit Court of Humphreys County to a charge of burglary of a dwelling house. That court ordered, in part, the following:
"It is further ordered that the Court reserves the right to amend or modify this sentence if within 180 days the Defendant properly completes the RID Program in the Mississippi State Penitentiary ..."
All four of these sentences were ordered to be served concurrently.
Smith was assigned to the Regimented Inmate Discipline (RID) Program at Parchman. He reported to the Department of Corrections on August 17, 1988. Prior to completing the program, Smith was accused of committing a rules violation. He was removed from the program on or about December 19, 1988, and placed in the general prison population. Consequently, the Department of Corrections did not recommend that Smith be placed on earned probation, and the lower court took no action to resentence him.
On August 9, 1988, Smith filed in the Circuit Court of Hinds County a pro se "Petition For Writ of Habeas Corpus To Be Released [From] Prison Under Circuit Court Rule." He alleged he had been unlawfully removed from the RID Program, that he had not been sentenced by the lower court to "do time in State Prison" only to "go through a program," and that he was therefore being illegally confined.
Smith claimed he was denied his right to due process of law because he was not afforded a hearing with respect to the rules violation which precipitated his removal from the RID Program and insertion into the general population. The relief requested by the prisoner was "[t]o be released from illegal confinement, and that a hearing be brought on to EXECUTE petitioner's release."
Smith's petition was treated by the trial court as an action filed under the Mississippi Uniform Post-Conviction Collateral Relief Act. Counsel was appointed for Smith, and an evidentiary hearing was conducted on November 21, 1989, to consider his claims.
During the evidentiary hearing, Robert Taylor, a unit administrator for the RID Program, produced Smith's record and described the facts and circumstances surrounding Smith's removal from the program. Taylor's testimony was uncontested. Smith did not testify.
When Smith entered the RID Program in August, 1988, it operated in two phases. Smith was scheduled to complete Phase I in November but was held over because of deficiencies in his conduct. These deficiencies *1223 appear to have been minor transgressions of the rules governing the RID Program.
On December 16, 1988, Smith and another inmate secreted themselves inside a seven (7) foot deep "pipe chase" during a "yard call." They were discovered by Taylor and Anderson, a drill instructor, and ordered to come forth immediately. Both Taylor and Anderson detected an odor of marijuana as the two inmates backed out of the "pipe chase." Following a nonproductive pat down of the two inmates, Taylor suggested a strip search. Smith subsequently admitted to Taylor he had brought three (3) marijuana joints back from an Adult Basic Education class. Smith gave Taylor the remnants of one marijuana cigarette and stated he had eaten the two others while inside the "pipe chase."
After receiving an oral report from Internal Affairs that the cigarette confiscated from Smith contained marijuana, Taylor, on December 19th, completed a rules violation report (RVR), which he immediately submitted to Dr. Whelan, the director of the RID Program. Taylor recommended Smith's immediate removal from the program on December 19, 1988. That recommendation was accepted, and Smith was assigned to another unit in the general prison population. A reclassification form indicated Smith was "interviewed" on December 19th with respect to this action, and Smith's signature appears on the form.
By virtue of the rules and regulations contained in the inmate handbook, a prisoner is entitled to receive a copy of a rules violation report within seventy-two (72) hours of the violation. Because Smith was removed to another unit, he neither received a copy of the RVR nor was he given a disciplinary hearing prior to his removal from the program and insertion into the general prison population. Taylor testified the offense of marijuana possession was a "serious charge" which could have resulted, not only in dismissal from RID, but, following a disciplinary hearing, additional disciplinary action within the inmate population.
Taylor further testified that Smith had three (3) prior violations of RID regulations for which he was held over in Phase I. Taylor testified his recommendation for removal from the program was based on Smith's cumulative insubordination and his failure to reform his behavior after counseling. The marijuana incident was the culmination of Smith's unwillingness to submit to authority.
On the 13th day of December, 1989, the trial judge denied Smith's petition for relief in a seven (7) page order replete with findings of fact and conclusions of law.

III.
Smith claims on appeal that a person placed on a program of earned probation[1] pursuant to the provisions of Miss. Code Ann. § 47-7-47 (Supp. 1990), has a liberty interest in the right to earn a recommendation of probation by satisfactory completion of the RID program within 180 days. Smith takes the position that the failure to grant him a hearing with respect to his rules violation before determining that he should be removed from RID and receive an adverse recommendation from the Department of Corrections denied him due process of law and deprived him of a valuable right, the right to be considered for earned probation.
The State, on the other hand, contends that earned probation is not a right; that neither the Due Process Clause nor § 47-7-47 conferred upon Smith a protected liberty interest in the right to earn a recommendation of release on probation by satisfactory completion of the RID program, and therefore, no constitutional claim can prevail.
Miss. Code Ann. § 47-7-47 (Supp. 1900), empowers the judge of any circuit court to place certain felony offenders on a program of "earned probation." It reads, in its pertinent parts, as follows:
(1) The judge of any circuit court may place an offender on a program of earned probation after a period of confinement *1224 as set out herein and the judge may seek the advice of the Commissioner of the Department of Corrections and shall direct that such defendant be under the supervision of the Department of Corrections.
(2)(a) Any circuit court or county court may, upon its own motion, acting upon the advice and consent of the Commissioner of the Department of Corrections at the time of the initial sentencing only, not earlier than thirty (30) days nor later than one hundred eighty (180) days after the defendant has been delivered to the custody of the Department of Corrections, to which he has been sentenced, suspend the further execution of the sentence and place the defendant on earned probation,...
Miss. Code Ann. § 47-7-47 (Supp. 1990) (emphasis added)
The lower court found as a fact that "[i]n practice, this somewhat awkward language has been considered authorization for the RID program to which some offenders are assigned by [the] MDOC, sometimes at the express direction or recommendation of the sentencing judge. There is no expression of MDOC `advice or consent' at the time of [initial] sentencing. Success in RID determines whether [the] MDOC will recommend earned probation. In the inst[ant] case the sentencing order[s] expressly provided that Smith successfully complete RID."
The trial judge also examined sections of the MDOC Regimented Inmate Discipline Handbook which informs participants, inter alia, that (1) "[o]nce you enter the [RID] program you will be expected to complete it. If for some reason you are dropped from the program, you will not be allowed to re-enter. The judge and Department of Offender Services will be informed and it will be their decision as to whether or not you will remain eligible for an early release on probation or release to a C.W.C." and (2) "[i]nmates who fail to make satisfactory progress are at the risk of losing their earned probation status and may be transferred to the inmate general population to serve their sentence."
The circuit judge, relying upon Harden v. State, 547 So.2d 1150 (Miss. 1989), concluded there is no liberty interest in release pursuant to the provisions of section 47-7-47. His conclusion of law is the product of cogent reasoning which flowed in the wake of an evidentiary hearing. We hold the result reached by the trial judge was both judicious and correct. Accordingly, his opinion and order is set forth, in its principal parts, as follows:

The question whether Smith may assert a due process claim turns on whether he has been deprived of a "liberty" interest. The matter of the liberty interests of those convicted of crimes and subjected to incarceration or probation has been addressed on a number of occasions by the United States Supreme Court and recently by the Supreme Court of Mississippi. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Greenholtz v. Inmates of Nebraska Penal & Cor., 442 U.S. 1, 99 S.Ct. 2100 [60 L.Ed.2d 668] (1979); Harden [v. State, 547 So.2d 1150 (Miss. 1989)].
In Wolff the court held that Nebraska's statutory scheme providing that prisoners could shorten the duration of their incarceration by earning "good time" of which they could be deprived only for "major misconduct" was such that
the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state created right is not arbitrarily abrogated.
Later, in Greenholtz, another case arising out of Nebraska, the Supreme Court held that that state's parole statute, which provided that the Board of Parole "shall" grant parole to all prisoners eligible unless it finds certain enumerated facts, created an "expectancy of release" that was "entitled to some measure of constitutional protection." 442 U.S. at 11 [99 S.Ct. at 2106]. The court took pains to point out, however, that its *1225 decision was based on the unique language of the Nebraska statute and expressly provided that the statutory schemes of other states would be considered on a case by case bas[i]s.
Our Supreme Court relied on the "shall" versus "may" distinction suggested in Greenholtz in analyzing our parole statute and concluded that because our statute contains no mandatory language and leaves parole in the absolute discretion of the parole board, Mississippi prisoners have "no constitutionally recognized liberty interest" in parole. Harden, supra, [5]47 So.2d at 1152. A like result was reached by the United States Court of Appeals for the Fifth Circuit. Scales v. Mississippi State Parole Board, 831 F.2d 565 (5th Cir.1987).

Obviously, our earned probation statute is similar to our parole statute in that it provides that a prisoner sentenced pursuant thereto may earn probation. No objective criteria are established for determining whether the MDOC should grant or withhold its consent to or recommendation of probation. The matter is left to the absolute discretion of that executive agency. Harden dictates that this court conclude that there is no liberty interest in release pursuant to the provisions of Section 47-7-47.

To the extent that Section 47-7-47 is construed to vest the entire discretion after initial sentencing in the court, again, no objective criteria are established and the matter is left to the absolute discretion of the court. Following the reasoning of Harden, no liberty interest attaches. This is not to say that the court does not have the power to examine the circumstances of the refusal of the MDOC to recommend release. Assuming, without deciding that the statute vests sole discretion in the sentencing court whether to follow the advice of the MDOC, the prisoner may surely submit such information as he deems necessary to the court for its use in the determination whether he should be released regardless of MDOC's recommendation.
If the statute is construed to vest absolute discretion in both the MDOC and the court, the actions of the MDOC can be examined by the court pursuant to its certiorari authority codified as Section 11-51-95 within the limitations inherent to that procedure. See, Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).
In the instant case, the court's determination not to award earned probation was based on the decision of the MDOC that he failed to successfully complete the RID program as provided in the sentencing order. That decision appears, from the testimony and record before the court, to have been made based on more than adequate evidence of a failure of Smith to attain [a]n attitudinal adjustment allowing the MDOC to predict success as a probationer. The MDOC has violated no statutory or constitutional right of the defendant. It has acted on substantial evidence in accordance with the authority vested in it by statute.
(emphasis added)
Section 47-7-47 creates a procedure whereby the court may place the prisoner on probation. The language is permissive, not mandatory in nature. Here the court did not award earned probation. Smith, therefore, has only been denied probation; he has not been divested of it. "[T]here is a human difference between losing what one has and not getting what one wants." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668, 677 (1979) quoting from Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1296 (1975).
"While no State may `deprive any person of life, liberty or property, without due process of law,' it is well settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources  the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675, 685 (1983).
We reject any argument the Due Process Clause independently generates a constitutionally *1226 protected liberty interest in the form of an expectation of release on probation. If a liberty interest arises at all, it is a product of state law, not the Federal Constitution. Hewitt v. Helms, supra; Greenholtz, supra; Harden v. State, supra.
The outcome of this case turns on whether section 47-7-47 creates a constitutionally protected liberty interest in the form of an expectation of an early release on probation. Our recent holding in Harden v. State, supra, compels a conclusion it does not.
Relying upon the "shall" versus "may" distinction found in Greenholtz, we held in Harden that the language of the Mississippi parole statute was permissive and did not generate a reasonable expectation of parole amounting to a protected liberty interest. Because our parole statute contained no mandatory language and left the matter of parole in the absolute discretion of the parole board, we concluded that Mississippi prisoners have "no constitutionally recognized liberty interest" in parole. See also Scales v. Mississippi State Parole Board, 831 F.2d 565, 566 (5th Cir.1987).
We concur with the conclusion reached by the trial court that Mississippi's earned probation statute is similar in language and concept to its parole statute in that a court "may" place a prisoner on earned probation. As noted, this language is permissive, not mandatory. "For a liberty interest to be created by statute or regulation, the statute or regulation must use `language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed [and that certain action will not be taken by government officials] absent specified substantive predicates.'" Castaneda v. Henman, 914 F.2d 981, 983 (7th Cir.1990), quoting from Hewitt, 459 U.S. at 471-72, 103 S.Ct. at 871, 74 L.Ed.2d at 688.
The Supreme Court of the United States has addressed the matter of liberty interests in Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); and Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). "These cases demonstrate that a State creates a protected liberty interest by placing substantive limitations on official discretion." In order to prove that the interest has been created, the prisoner must show "particularized standards or criteria" which guide the State's decision makers. Olim, 461 U.S. at 249, 103 S.Ct. at 1747, 75 L.Ed.2d at 823.
Section 47-7-47 contains no objective standards or criteria for determining whether the Department of Corrections should either grant or withhold a recommendation of probation to the court. Nor does it contain objective standards or criteria for determining whether the court should accept the advice and recommendations made by the MDOC. Rather, the statute vests absolute discretion in both the MDOC and the court.
The discretion conferred on the Department of Corrections and the trial court "... affords a prisoner no constitutionally recognized liberty interest." Harden, supra, at 1152. Harden compels a conclusion there is no liberty interest in release pursuant to the provisions of § 47-7-47.
Judge Banks, after wisely conducting an evidentiary hearing, found as a fact "the court's determination not to award earned probation was based on the decision of the MDOC that he failed to successfully complete the RID program as provided in the sentencing order(s)." He further found, based upon the testimony and record before him, the decision of the Department of Corrections to remove Smith from the program "to have been based on more than adequate evidence of a failure of Smith to attain an attitudinal adjustment allowing the MDOC to predict success as a probationer."

IV.
We agree that the MDOC has violated no statutory or constitutional right of this defendant by not affording him a hearing.[2] This is because neither the Due Process *1227 Clause nor Mississippi law gives rise to a protected liberty interest in the form of an expectation of release on probation.
LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF AFFIRMED
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
BANKS, J., not participating.
NOTES
[1] Colloquially known as "shock probation."
[2] Assuming Smith was entitled to a hearing, he has now had it.