**Robert Maxwell KELCH,
Petitioner–Appellant,**

v.

**DIRECTOR, NEVADA DEPARTMENT
OF PRISONS, and Ron Angelone,
Respondents–Appellees.**

No. 93–15081.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided Dec. 1, 1993.

Stewart L. Bell, Bell, Davidson & Myers, Las Vegas, NV, for petitioner-appellant.

William P. Henry, Sr. Deputy General, Las Vegas, NV, for respondents-appellees.

Before: BOOCHEVER, THOMPSON and O'SCANNLAIN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

This is an appeal from the district court's denial of a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 (1988). We have jurisdiction under 28 U.S.C. § 1291 (1988), and we affirm. We hold that the Nevada Board of Pardons Commissioners ("the Board") did not deny Robert Maxwell Kelch, a Nevada state prisoner, substantive due process under the Fourteenth Amendment when it rescinded its earlier commutation of his sentence.

### FACTS

In 1985, Kelch pleaded guilty to second degree murder of his wife. The trial court sentenced him to twenty years in prison, the maximum penalty for this offense under Nevada law. After he had served two years, he applied to the Nevada Board of Pardons Commissioners for a pardon or commutation of his sentence. At the request of Kelch's attorney, a Board member scheduled a hearing for May 12, 1987. Although notice was sent to the district attorney one day after the hearing was scheduled, the chosen date gave the district attorney only twelve days notice of the hearing, instead of the thirty days prescribed by statute. No Board member made an explicit determination that there was "good cause" to reduce the notice period.

At the May 12, 1987 hearing, the Board heard evidence that included Kelch's edu-cational pursuits, assistance to other prisoners, and model behavior during his incarceration. The Nye County District Attorney did not attend the hearing, nor did he respond in any way to the notice he had received twelve days earlier. As a result, the Board heard no evidence against Kelch's requested commutation. After the hearing, the Board issued an order commuting Kelch's sentence from twenty to five years.

Before Kelch's release, the Nye County District Attorney filed a motion for reconsideration. The Board granted the motion and held a second hearing on November 23, 1987. At this hearing the District Attorney appeared and asked the Board to reinstate the original sentence.

At the second hearing, the Board heard dramatically different evidence from that presented at the first hearing. At the first hearing, Kelch told the Board that he accidentally shot his wife when he moved the gun he killed her with from one room to another, and that the gun was five feet from her when it discharged. Kelch's lawyer argued there was no evidence that Kelch had intentionally killed his wife.

In contrast, at the second hearing, the Board learned that the gun was only two feet from Kelch's wife when it discharged, and Kelch had previously told his wife he "was going to shoot her between the eyes one of these days." Kelch killed his wife by a shot in the eye.

The Board also heard evidence at the second hearing that Kelch's wife's daughter, who was present when Kelch shot his wife, stated that Kelch "walked up to [his wife], pointed a gun at her face, and said, 'Do you want to see something funny?'" That's when the shot that killed her was fired.

At the first hearing, Kelch's attorney represented that Kelch was "not a violent person;" Kelch had not been physically violent with his wife in the past; they had a "loving relationship;" and his wife had not been afraid of him. At the second hearing, the Board heard evidence that Kelch was a violent person with "an explosive temper;" Kelch and his wife argued frequently; the couple had been asked to leave a bar because

they created a scene fighting; his wife was contemplating divorce at the time of her murder; Kelch beat his wife; she had expressed fear of him; and three days before the shooting he publicly tried to choke her. The second hearing also revealed that Kelch had a history of substance abuse, his own mother had obtained a restraining order against him, and he had threatened other people with the same caliber weapon his wife was shot with. Based upon the evidence presented at the second hearing, the Board rescinded the commutation of Kelch's sentence by a vote of six to one.

Kelch then filed a petition for a writ of habeas corpus in the United States District Court for the District of Nevada. That court denied the petition because Kelch had not exhausted his state court remedies. Kelch returned to state court. The Supreme Court of Nevada denied his habeas petition. That court held that although he had obtained a liberty interest when the Board commuted his sentence, the Board had provided him with due process in the rescission of that commutation. *Kelch v. Director, Nev. Dept. of Prisons*, 107 Nev. 827, 822 P.2d 1094 (1991).

On May 26, 1992, Kelch filed his second federal habeas petition in the district court. He contended that the Nevada Supreme Court erred by not evaluating the rescission of his commuted sentence under the requirements of substantive due process. The district court denied the petition. It held that Kelch had a liberty interest in the commutation of his sentence, but that the Board had not denied him procedural due process in its rescission, nor had the Board violated his substantive due process rights. This appeal followed.

## ANALYSIS

A. The Board's Jurisdiction to Rescind the Commutation

■ Whether the Nevada Board of Pardons Commissioners had jurisdiction to rescind the commutation of Kelch's sentence is a question of state law, separate from the due process issue.

Article 5, section 14 of the Nevada constitution and section 213.010 of the Nevada Revised Statutes establish the Nevada Board of Pardons Commissioners. The Board has the power to commute sentences "upon such conditions and with such limitations and restrictions as they may think proper." Nev. Const. art. V, § 14. However, neither the Nevada constitution nor Nevada statutory law states whether, or under what circumstances, the Board may revoke a commutation, once granted.

Nor has any Nevada court, including the Nevada Supreme Court that heard Kelch's state habeas petition, directly addressed the issue whether the Nevada Board of Pardons Commissioners has jurisdiction to rescind its grant of a commutation of a sentence. We must, therefore, predict how the Nevada Supreme Court would rule if it were to address this issue. *S & R Metals, Inc. v. C. Itoh & Co.*, 859 F.2d 814, 816 (9th Cir.1988) ("In the absence of ... express guidance, we must interpret and apply the law as we predict the state's highest court would interpret and apply it.") (citing *Fiorito Bros. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir.1984)).

We predict that if the Nevada Supreme Court were to consider the issue, it would hold that the Board has jurisdiction to rescind its commutation of a sentence, as the Board did in this case. Indeed, the Nevada Supreme Court decided this question by implication when it denied Kelch's state habeas petition. If the Board had lacked jurisdiction to rescind its commutation of Kelch's sentence, the Nevada Supreme Court would have said so. It did not. Moreover, Justice Young in his dissent in *Kelch* confirmed that the majority implicitly held the Board had jurisdiction to rescind the commutation of Kelch's sentence. Justice Young wrote: "Respectfully, I dissent. I conclude that the Nevada Board of Pardons Commissioners (Board) did *not* have jurisdiction to rescind the commutation of a sentence." *Kelch*, 822 P.2d at 1099 (Young, J. dissenting) (emphasis added).

Our prediction is further buttressed by the fact that under Nevada law the Nevada Board of Pardons Commissioners is an executive board. *State v. District Court*, 85 Nev.

485, 488, 457 P.2d 217, 218 (1969) ("In this state the granting of any relief from punishment after incarceration in the state prison is an executive function authorized by the legislature and performed by the state board of parole commissioners, or by the state board of pardons commissioners."); *State v. Clark*, 90 Nev. 144, 147, 520 P.2d 1361, 1363 (1974) ("In this State the granting of relief from incarceration is authorized by the legislature and performed by the state board as an executive function.") The Supreme Court of Nevada has held that "administrative agencies have an inherent authority to reconsider their own decision, since the power to decide in the first instance carries with it the power to reconsider." *L & T Corp. v. City of Henderson*, 98 Nev. 501, 504, 654 P.2d 1015, 1017 (1982) (quoting *Trujillo v. General Electric Co.*, 621 F.2d 1084, 1086 (10th Cir.1980)).

We conclude that, under Nevada state law, the Board of Pardons Commissioners is an executive board and had jurisdiction to rescind its commutation of Kelch's sentence.

B. Substantive Due Process

Although the Nevada Board of Pardons Commissioners had the power to rescind the commutation of Kelch's sentence, we must determine whether its exercise of that power violated Kelch's right to substantive due process.

The district court found no violation of Kelch's right to procedural due process, and Kelch does not contest this. Instead, he argues that at the moment the Board commuted his sentence to five years he obtained a vested, substantive due process right to be released in accordance with that commuted sentence, and regardless of the procedures the Board afforded, that right could not be taken away. *See Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir.1989) (substantive due process protects individuals against governmental acts "that are prohibited 'regardless of the fairness of the procedures used to implement them.'") (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990).

The due process clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. In analyzing Kelch's substantive due process argument, we must decide: (1) whether Kelch obtained a liberty interest when the Board commuted his sentence, and (2) if he did, whether the Board's rescission of that commutation violated substantive due process.

█ In determining whether Kelch obtained a liberty interest, one of the relevant questions is whether he suffered a "sufficiently 'grievous loss' to trigger the protection of due process." *Olim v. Wakinekona*, 461 U.S. 238, 252, 103 S.Ct. 1741, 1749, 75 L.Ed.2d 813 (1983) (citing *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980)). In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) the Supreme Court held that once a prisoner is granted parole, its termination inflicts a "grievous loss" on the parolee. *Id.* at 482, 92 S.Ct. at 2601.

If termination of parole inflicts a grievous loss, so too does revocation of a commutation of sentence. The Court, however, has " 'reject[ed] ... the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the ... protections of the Due Process Clause.'" *Jago v. Van Curen*, 454 U.S. 14, 17, 102 S.Ct. 31, 34, 70 L.Ed.2d 13 (1981) (citing *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). In determining whether the due process clause affords Kelch the protection he seeks, we must look "to the nature of the interest at stake." *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). The Court has determined that "to obtain a protectible right 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Here, Kelch had a legitimate expectation of commutation of his sentence—not merely a unilateral hope. The Board created this expectation when it issued its order stating: "It is hereby ordered that effective this date appellant's sentence be commuted from 20 years to five years of imprisonment. . . ."

*Jago* is not to the contrary. There, the Court held that no liberty interest existed where the parole board notified the prisoner that the board "is . . . ordering a parole release," but the Board subsequently decided to deny parole, and parole was never formally granted. *Jago,* 454 U.S. at 15, 17, 102 S.Ct. at 33, 34. Here, Kelch's sentence was commuted by formal order of the Board.

We reject the appellees' argument that Kelch could not have a legitimate liberty interest in the commutation of his sentence until he was actually released. We agree with the Eleventh Circuit's treatment of this issue in *Ellard v. Alabama Board of Pardons and Paroles,* 824 F.2d 937, 943 (11th Cir. 1987), *cert. denied,* 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988). There, the court held that a prisoner's constitutionally protected liberty interest in parole granted by the Alabama Board of Pardons and Parole was not defeated by his release from confinement in Alabama and transfer to a prison in Georgia to serve out a separate sentence imposed by that state. *Id.* The prisoner in *Ellard* had not been released from the Georgia prison when the Board revoked his parole. Observing that the Board lacked unrestricted authority to revoke probation, the court concluded he had a protected liberty interest in his parole.

We conclude that Kelch obtained a liberty interest when the Board issued the order commuting his sentence. This liberty interest entitled him to substantive due process. Substantive due process requires that government action depriving a person of life, liberty or property have a rational, non-arbitrary connection to a legitimate purpose. *See, e.g., Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 4 (7th Cir.1974). "In determining whether a substantive right protected by the Due Process Clause has been violated, it is

necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" *Youngberg v. Romeo,* 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982), quoting *Poe v. Ullman,* 367 U.S. 497, 542, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting).

Kelch clearly has a strong interest in his release from prison in conformance with the commutation order. The state created this interest when it granted the commutation of sentence, and it should not be overridden lightly. An individual's liberty encompasses the ability to pursue interests of choice, to move from place to place unhindered by the government, and to choose freely any lawful way of living. "[A liberty interest] is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Planned Parenthood v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2805, 120 L.Ed.2d 674 (1992) (quoting *Poe v. Ullman,* 367 U.S. 497, 543, 81 S.Ct. 1752, 1777, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting)). Deprivation of liberty, next to deprivation of life, is the greatest punishment a state can impose upon an individual, and the importance of regaining one's liberty should not be undervalued.

■■■■ The state's countervailing interest is also strong. A state has a fundamental interest in appropriately punishing those who violate its criminal laws, *Bearden v. Georgia,* 461 U.S. 660, 669, 103 S.Ct. 2064, 2071, 76 L.Ed.2d 221 (1983), and in separating convicted individuals from the public for the protection of the general population. *See, e.g., Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804–05, 41 L.Ed.2d 495 (1974) (state has legitimate interest in confining prisoners to deter crime and to protect society by quarantining criminal offenders until rehabilitative process can work); *Hickey v. Morris,* 722 F.2d 543, 548 (9th Cir.1983) (state has an interest in avoiding premature release of insanity acquittees who have committed felonies and have been declared dangerous to society). The state also has an interest in insuring that it has a fair opportunity to present the case against prisoners petitioning for early release, and in protect-

ing against the premature release of dangerous criminals.

■ In this case, the district attorney's stated basis for reopening Kelch's case was Kelch's and the Board's failure to afford him the statutorily required thirty-day notice of the hearing. *See* Nev.Rev.Stat. § 213.020.[1] The district attorney argues this lack of notice prevented him from preparing any response to the application. This argument has merit.

The state of Nevada protects its interest in avoiding the premature release of prisoners by establishing procedures that ensure fully informed commutation proceedings. The notice requirements are clearly designed to allow the district attorney sufficient time to marshal evidence and prepare arguments opposing an application for commutation.

Here, Kelch did not follow Nevada procedures for giving notice of his application for commutation.[2] The district attorney received no notice from Kelch of the hearing, and received his only notice from the Board, just twelve days before the hearing. The notice given was less than half the required thirty days, and the district attorney averred he had an inadequate opportunity to prepare for the hearing or even to respond to the application for commutation. As a result, the Board at the first hearing had before it a woefully incomplete picture of Kelch's case.

Because the Board makes its commutation decisions based on the evidence presented at the commutation hearing, it is critical that it have a full and accurate view of the case before deciding whether to commute a sentence. This was clearly what the Nevada legislature intended when it required applicants to give the district attorney notice and then required the district attorney, upon receiving the required notice, to furnish the Board with a statement containing information relevant to the hearing. *See* Nev.Rev. Stat. § 213.040(1).

The Board's decision making process was impaired here by the district attorney's absence, caused by the failure to furnish the required notice. This failure resulted in an initial hearing which gave insufficient attention to the state's interest. In this circumstance, the Board's subsequent action in rescinding Kelch's commutation of his sentence was a rational, non-arbitrary means of effectuating the state's legitimate interests in informed and properly conducted commutation proceedings and in protecting the general population from dangerous criminals. The balance of the competing interests between Kelch and the state tips in favor of the state. *See Mills v. Rogers*, 457 U.S. 291, 299, 102 S.Ct. 2442, 2448, 73 L.Ed.2d 16 (1982). Accordingly, we hold that there was no substantive due process violation.

## CONCLUSION

Under Nevada law, the Nevada Board of Pardons Commissioners had jurisdiction to

---

1.  Section 213.020 states as follows:

    1.  Any person intending to apply to have ... a punishment commuted, or a pardon granted ... shall make out a notice and four copies in writing of the application, specifying therein:
    (a) The court in which the judgment was rendered;
    (b) The amount of the fine or forfeiture, or kind or character of punishment;
    (c) The name of the person in whose favor the application is to be made;
    (d) The particular grounds upon which the application will be based; and
    (e) The time when it will be presented.
    2.  Two of the copies must be served upon the district attorney and one upon the district judge of the county wherein the conviction was had. The fourth copy must be served upon the director of the department of prisons and the original must be filed with the clerk of the board....

    3.  The notice must be served, as provided in this section, at least 30 days before the presentation of the application, unless a member of the board, for good cause, prescribes a shorter time.

2.  Section 213.020(3) of the Nevada Revised Statutes requires that notice of a petition for commutation must be served on the district attorney at least thirty days before the hearing, "unless a member of the board, for good cause, prescribes a shorter time." Kelch does not dispute that the notice to the district attorney fell short of the thirty-day requirement. He claims, however, that when a board member scheduled the hearing only twelve days before the meeting, he must implicitly have found "good cause" to shorten the notice period. [Opposition to Motion for Reconsideration 1–2] We disagree. The ministerial act of scheduling a hearing does not amount to an order shortening time for good cause as required by the statute.

rescind the commutation of Kelch's sentence. Although Kelch obtained a liberty interest when the Board commuted his sentence, the Board's rescission of the commutation of his sentence did not violate Kelch's right to substantive due process. The district court did not err in denying his habeas petition.

AFFIRMED.