722 So.2d 465 (1998)
In re Attorney General Mike MOORE.
No. 95-M-00277-SCT.
Supreme Court of Mississippi.
September 24, 1998.
Office of the Attorney General by Edward A. Snyder, Attorney for Appellant.
Frank Allison Russell, Tupelo, Attorney for Appellee.
En Banc.

*466 ON PETITION FOR WRIT OF MANDAMUS AND/OR OTHER APPROPRIATE EXTRAORDINARY WRIT

BANKS, Justice, for the Court:
¶ 1. In this case the State of Mississippi comes before the Court requesting by petition for extraordinary relief that this Court vacate certain orders by which the Circuit Court of Monroe County had freed Robert Daniel Parham, who was incarcerated at Parchman. After consideration of the State's request and the pleadings filed by the respondents we conclude that the orders in question were entered without the authority of law and as such are void and must be vacated. It follows that Parham must be returned to the custody of the Mississippi Department of Corrections.

I.
¶ 2. Robert Daniel Parham was indicted for the murder of Cynthia Calcote by the Monroe County Grand Jury in October 1991. In December 1992, on agreed motion, Circuit Judge Frank A. Russell signed an order reducing the charge against Parham to manslaughter. Parham, represented by counsel, pled guilty to manslaughter shortly thereafter. On January 8, 1993, Judge Russell sentenced Parham to a term of twenty years in MDOC
"with ten (10) years suspended pending future good behavior of the defendant. Further ordered to make restitution of $10,000.00 to Onnie Calcote for the use and benefits of the child of the deceased, Priscilla Calcote. Defendant further ordered to pay the court cost of $168.00. Both restitution and court cost to be paid in full today. The Court reserves the right of judicial review."
This language reserving to the circuit court the right of judicial review was also included on the prisoner commitment report.
¶ 3. On June 2, 1994, Robert Parham was considered for parole by the Parole Board and denied. Further consideration was continued for eighteen months. The reasons for denial were provided as follows: "Serious nature of offense; prior misdemeanor conviction(s); further investigation required; insufficient time served; the Board believes the ability of willingness to fulfill the obligations of a law-abiding citizen is lacking, pursuant to Section 47-7-17 of the Mississippi Code Annotated as amended."
¶ 4. On July 19, 1994, Judge Russell entered an order in which he stated that Parham had paid restitution and court costs in full. Judge Russell further stated that he had received a report from MDOC on Parham which was favorable as far as Parham's behavior and future prognosis. Judge Russell ordered that the balance of Parham's sentence be suspended pending Parham's good behavior and that Parham be placed on supervised probation for five years. Judge Russell ordered that Parham be released from MDOC immediately, and Parham was released on July 27, 1994. On August 5, 1994, Circuit Judge Barry Ford entered a similar order concerning Parham. Judge Russell states that this was done simply to accommodate Judge Russell as Judge Ford was physically present in Monroe County "on the date that Defendant Parham reported from the MDOC for further orders in regard to probation" while Judge Russell was elsewhere in the district. Judge Russell states that Judge Ford was merely assisting him "by carrying out the intent and instruction" of the July 19 order, but "was not involved in any respect" with that order.
¶ 5. On February 15, 1995, the Attorney General's Office filed a Petition to Vacate Void Orders in Monroe County Circuit Court. The State alleged that Judge Russell and Judge Ford were without authority to review and alter Parham's sentence as they had done. Petitioner asked that the judges revoke and vacate the orders in question and that a bench warrant issue for Parham so that he might be taken into custody. On March 14, 1995, Judge Ford denied the petition as to his order.
¶ 6. The Attorney General's Office filed its Petition for Writ of Mandamus and/or Other Appropriate Extraordinary Writ with this Court on March 17, 1995. Petitioner stated that Judge Russell had scheduled a hearing on the petition as to his order for March 29, 1995. Petitioner asked that this Court stay the March 29 hearing scheduled before *467 Judge Russell, including any requirement that MDOC comply with a subpoena duces tecum that Judge Russell had issued, and order that Judge Russell and Judge Ford vacate or rescind the challenged orders and allow Robert Parham to be taken into custody by the MDOC. The hearing scheduled for March 29 did not take place. In September 1995 this Court denied the Attorney General's petition and ordered that a hearing on the Petition to Vacate Void Orders take place in the circuit court within sixty days.
¶ 7. On January 24, 1996, the circuit court held a hearing on the Petition to Vacate Void Orders filed by the Attorney General. Two witnesses were called: Susie Steiger, a case manager supervisor at Parchman, and William David Robbins, a field officer for the MDOC. Both testified that the release of inmates was not being handled within the time requirements of Miss.Code Ann. § 47-7-47. Judge Russell entered his order denying the petition on February 5, 1996.
¶ 8. On April 5, 1996, the Attorney General filed a Notification of Results of Hearing Ordered by Supreme Court and Motion to Supplement Petition for Writ of Mandamus in this Court. The Petition asserted that the relief originally requested by the Attorney General was proper as Judge Russell had decided the petition filed in the circuit court. Judge Russell and Judge Ford filed a Motion to Dismiss and for Sanctions in this Court, alleging that the Attorney General's pleading was frivolous. The matter was considered by this Court en banc. By order dated January 13, 1997, this Court denied Judge Russell and Judge Ford's Motion to Dismiss and for Sanctions and granted Robert Daniel Parham leave to intervene.

II.
¶ 9. The issues presented have been clarified by this Court's decision in Mississippi Commission on Judicial Performance v. Russell, 691 So.2d 929 (Miss.1997). Judge Russell cites three cases in his Brief Opposing Writ of Mandamus: Smith v. State, 580 So.2d 1221 (Miss.1991); Wigginton v. State, 668 So.2d 763 (Miss.1996); and Russell. Both Smith and Wigginton were cited and discussed in Russell in a manner that is dispositive for this petition.
¶ 10. Judge Russell argues that Miss.Code Ann. § 47-7-47 is patently ambiguous and conflicting on its face. He relies on this Court's comments in Smith v. State, 580 So.2d 1221, 1222 (Miss.1991), where Smith, who pled guilty to house burglary and drug possession charges, was sentenced under the terms of § 47-7-47 and where the trial judge "reserve[d] the right to amend or modify this sentence if within 180 days the Defendant properly completes the RID Program." Smith was accused of a rules violation before completing the RID program, and as a result was placed in the general prison population without having his sentence amended or being placed on earned probation. He alleged that this removal from RID without a hearing denied his due process rights. This Court quoted the trial judge, who stated that
[i]n practice, this somewhat awkward language has been considered authorization for the RID program to which some offenders are assigned by [the] MDOC, sometimes at the express direction or recommendation of the sentencing judge. There is no expression of MDOC `advice and consent' at the time of [initial] sentencing. Success in RID determines whether [the] MDOC will recommend earned probation. In the inst[ant] case the sentencing order[s] expressly provided that Smith successfully complete RID.
....
Section 47-7-47 contains no objective standards or criteria for determining whether the Department of Corrections should either grant or withhold a recommendation of probation to the court. Nor does it contain objective standards or criteria for determining whether the court should accept the advice and recommendations made by the MDOC. Rather, the statute vests absolute discretion in both the MDOC and the court.
Smith, 580 So.2d at 1224, 1226. As to Smith, this Court stated in Russell, 691 So.2d at 938:
Judge Russell argues, citing Smith v. State, 580 So.2d 1221 (Miss.1991) that § 47-7-47 contains "awkward language." While the language contained in this statute *468 is not the epitome of clear drafting; it is obvious that some indication must be made at the time of the original sentencing. Moreover, each of the original sentencing orders in Smith contained the language "in the custody of the Miss. Dept. of Corrections under the terms and conditions of Miss.Code Ann., Sec. 47-7-47 (shock probation)...." Id. at 1222.
¶ 11. Judge Russell also continues to rely on Wigginton v. State, 668 So.2d 763 (Miss. 1996). This Court stated the following in Russell, 691 So.2d at 940-41, as to Wigginton:
Judge Russell argues that this Court's decision in Wigginton v. State, 668 So.2d 763 (Miss.1996) provides authority for his actions. Judge Russell interprets Wigginton to stand for the proposition that "a circuit judge has jurisdiction over a sentence, despite the fact that the 180 days described in § 47-7-47 has expired." Further, Judge Russell invites this Court to clarify the "conflict" between Wigginton and earlier cases which suggest that a circuit judge has no such authority after the defendant has been sentenced. See Denton v. Maples, 394 So.2d 895 (Miss. 1981); Harrigill v. State, 403 So.2d 867 (Miss.1981).
A close review of Wigginton and our prior cases reveals no conflict. In Wigginton, we were called upon to consider the plight of Bryan Scott Wigginton, an inmate originally sentenced pursuant to § 47-7-47. At the time of sentencing, the circuit judge reserved the right to review Wigginton's sentence for a period not exceeding 180-days, and upon the recommendation of MDOC, Wigginton was placed in the Regimented Inmate Discipline (RID) Program. Wigginton was involved in an altercation and placed into general population.
At a hearing held before the circuit judge, the matter of Wigginton's removal from the RID program was brought to the attention of the court. After taking the matter under advisement, the trial judge concluded that he had "no authority to review the procedure of the Mississippi Department of Corrections when a state prisoner feels that his rights have been violated or he or she has not been afforded due process." Wigginton, 668 So.2d at 764. This Court held "the circuit judge clearly has the authority to inquire into Wigginton's sentence, and see if there was any basis at all for Wigginton's removal from the program, and it remains discretionary with the circuit judge to determine whether or not Wigginton's sentence should be reviewed." Id. at 765.
There are obvious distinctions between Wigginton and the cases under consideration. Foremost, the trial judge in Wigginton complied with § 47-7-47 at the time of the original sentencing when Wigginton was committed to the RID program. Moreover, we did not hold in Wigginton that the circuit judge could release Wigginton, but rather that the judge could review Wigginton's removal from the RID program to ascertain whether or not his due process rights had been violated by MDOC.
The situation in Wigginton is clearly different than what we are faced with today. Here, Judge Russell used nunc pro tunc orders to suspend sentences and place prisoners on probation after the time of the original sentencing. In Wigginton we simply held that the trial judge who had initially committed a prisoner to the RID program could review the prisoner's expulsion from that program in order to ascertain whether there was any basis for removal.
Judge Russell also argues that Wigginton indicates that there is no 180-day time limitation on the right to review the sentence of an individual sentenced under § 47-7-47. We did not so hold. Rather, we stated that the circuit judge retained discretion as to whether or not to review Wigginton's removal from the RID program when that judge had initially sentenced Wigginton to shock probation/RID. We did not hold that a judge has unbridled discretion to review and suspend sentences regardless of the time limitations. To adopt this construction would be in direct conflict with § 47-7-47.
¶ 12. This Court concluded that "Judge Russell either knew or should have known *469 that his actions were in excess of the authority and jurisdiction conferred upon him as a circuit court judge." Russell, 691 So.2d at 948. This Court found that Judge Russell had no authority to release Robert Daniel Parham as he did.

III.
¶ 13. Robert Daniel Parham makes several arguments: first, that this Court is without jurisdiction at this point to hear the State's petition and grant the requested relief. The Court found this argument without merit when it denied Judge Russell's Motion to Dismiss and for Sanctions. The second argument is that Judge Russell acted within his authority under Miss.Code Ann. § 47-7-47 when he ordered Parham released outside the 180 day limit. This argument was rejected by this Court in Mississippi Commission on Judicial Performance v. Russell. Parham's third argument is that to vacate Judge Russell's order at this point would result in a violation of Parham's due process and equal protection rights.
¶ 14. Parham first acknowledges that this Court, in Smith v. State, 580 So.2d 1221 (Miss.1991), found that there was no protected liberty interest in the right to earn a recommendation of probation by satisfactory completion of the RID program within 180 days, and therefore Smith could be removed from the RID program without a hearing. Parham also cites Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), where the Supreme Court found that the Nebraska parole procedure, which afforded an opportunity to be heard and informed the inmate why parole had been denied, complied with required due process. Parham attempts to distinguish these two cases, saying that he, unlike Smith and the Nebraska inmates, has his freedom and therefore he cannot be re-incarcerated absent a violation of his constitutional rights.
¶ 15. Parham also cites Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), where Logan attempted to pursue a violation of the Illinois Fair Employment Practices Act by filing a complaint with the Illinois Fair Employment Practices Commission. The Commission was bound by statute to hold a conference on the complaint within 120 days. The Commission failed to do so, and Logan's complaint was dismissed for lack of jurisdiction. The Supreme Court found that the State of Illinois had deprived Logan of a property right, and he was due a hearing "to present his claim of entitlement." Logan, 455 U.S. at 434, 102 S.Ct. 1148. Parham says that he also would be denied due process where Judge Russell's delay in acting within the 180 day time period destroyed his remedy, or made void the order giving Parham his freedom.
¶ 16. The State relies on Fuller v. State, 100 Miss. 811, 57 So. 806 (1912), and Steadman v. State, 204 Miss. 322, 37 So.2d 357 (1948), for the proposition that an order which illegally suspends all or part of sentence is void, and any person free under such a void order has the same legal status as an escapee, and may be taken into custody without further hearing or court proceedings. See also Royalty v. McAdory, 278 So.2d 464 (Miss.1973)(citing Steadman).
¶ 17. Neither party cites authority concerning the due process implications where a state official or body has erroneously, or without legal authority, given an inmate his freedom and then the State subsequently attempts corrective measures. In Ellard v. Alabama Board of Pardons and Paroles, 824 F.2d 937 (11th Cir.1987), Ellard was serving a life sentence and a concurrent twenty-two year sentence in Alabama. Ellard had also pled guilty to a murder charge in Georgia. In 1981, for unknown reasons, the Alabama Parole Board paroled Ellard and released him into the custody of the Georgia prison system to serve his Georgia sentence. After public protest the Parole Board sought to revoke the parole. Eventually the Board did revoke Ellard's parole and he was returned to Alabama. Ellard began legal proceedings in Alabama state court to have the parole revocation reversed. Failing to obtain relief there, Ellard began habeas proceedings in federal court. The federal district court found that Ellard did not have any liberty interest through the grant of parole; that he was not entitled to due process protection; *470 and that there had been no equal protection violation in his treatment.
¶ 18. The Eleventh Circuit Court of Appeals reversed and remanded. It found first that "[t]hose liberty interests of prisoners that are protected by the fourteenth amendment `arise from two sources  the due process clause itself and the laws of the State.'" Ellard, 824 F.2d at 941 (quoting Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The court found in this case that the second source, the State of Alabama, had exercised its discretionary authority to grant parole to Ellard, and the question became "whether having exercised this discretionary authority, the Parole Board was constrained by `substantive limitations' on its authority to rescind a parole decision." Ellard, 824 F.2d at 942. The court found that Ellard's parole "placed substantive limits on the state's authority to return him to an Alabama prison," and in view of the statutory restrictions on parole revocation, Ellard had a constitutionally protected liberty interest. Ellard, 824 F.2d at 943.
¶ 19. The question then became, what process was due to Ellard. Ellard argued that his parole had to be reinstated because he had committed no parole violation. The State argued that Ellard's parole was void and that revocation, after a hearing, complied with all due process requirements. The court stated:
It is now well established that when a liberty interest arises out of state law, the substantive and procedural protections to be accorded that interest is a question of federal law. See Bearden v. Georgia, 461 U.S. 660, 665 n. 7, 103 S.Ct. 2064, 2069 n. 7, 76 L.Ed.2d 221 (1983); Vitek v. Jones, 445 U.S. at 490-91, 100 S.Ct. at 1262-63; cf. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 540-42, 105 S.Ct. 1487, 1492-93, 84 L.Ed.2d 494 (property interest). Consequently, if Ellard was granted a valid parole, the substantive constraints of the due process clause would permit the parole to be rescinded only if Ellard violated a parole condition. See Bearden v. Georgia, 461 U.S. at 665 n. 7, 103 S.Ct. at 2069 n. 7; Douglas v. Buder, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973)(per curiam). This federal substantive limitation on the authority of a state to rescind a valid parole does not also suggest, however, that the state could rescind an invalid parole only upon the violation of a parole condition. There is little doubt, for example, that, consistent with the due process clause, a state could revoke a parole that was mistakenly granted to the wrong individual. Likewise, the due process clause would not prohibit a state from declaring void a parole that was granted in clear violation of the state's parole guidelines, where, as here, the parole statute expressly provides for such a contingency, see Ala.Code § 15-22-40.
Ellard, 824 F.2d at 945. Because the matter had been dismissed on the pleadings, it was remanded for an evidentiary hearing, with the issue being defined as "whether, as a matter of state law constrained by the due process clause of the federal Constitution, the initial parole granted to Ellard was void." Ellard, 824 F.2d at 946.
¶ 20. A similar case, Kelch v. Director, Nevada Department of Prisons, 10 F.3d 684 (9th Cir.1993), arose when Kelch, who had pled guilty to the second degree murder of his wife and had served two years of his sentence, was able to obtain a hearing before the Board of Pardon Commissioners despite lack of timely notice on the part of Kelch, as required by statute, to the appropriate district attorney. Kelch presented his case and received a reduction in sentence from twenty years to five. The district attorney, who did not attend, filed for reconsideration. A second hearing was held and the district attorney presented a much different picture of Kelch, resulting in the earlier commutation of sentence being rescinded. Kelch was denied relief in the state courts and filed for habeas relief in the federal courts. The district court found that Kelch had a liberty interest in the commutation of his sentence, but that there had been no denial of his due process rights due to the rescission of the commutation.
¶ 21. The Ninth Circuit affirmed, finding first that the Board of Pardon Commissioners had the jurisdiction to rescind the commutation, *471 despite the absence of any explicit statutory or constitutional authority. Second, the court found that Kelch obtained a liberty interest when the Board issued its order commuting his sentence, which in turn entitled him to due process protection. The question raised here involved substantive due process, which
requires that government action depriving a person of life, liberty or property have a rational, non-arbitrary connection to a legitimate purpose. See, e.g., Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1, 4 (7th Cir.1974). "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance `the liberty of the individual' and `the demands of an organized society."
Kelch, 10 F.3d at 688 (citations omitted).
¶ 22. The court compared Kelch's interest in his sentence reduction as originally ordered by the Board, a substantial one, to the State's interests in (1) appropriate punishment for criminals; (2) protection of the general population from such persons; and (3) a fair opportunity to present its case before the Board and in conformity with statutory requirements. As (3) did not occur in this case, partially due to Kelch, the court found that the "balance of the competing interests" was in favor of the state. Kelch, 10 F.3d at 689.
¶ 23. In this case, it appears clear that Parham has a liberty interest in his freedom, having been released from Parchman in 1994, so that the State must afford Parham due process before it can revoke his release. This Court determined in Russell that, as a matter of state law, Judge Russell acted outside the authority granted to him by the Legislature in releasing Parham. That finding is affirmed here. Such an order is void, and void orders must be set aside. Since Judge Russell refused to do so, the State invoked a procedural remedy under M.R.A.P. 21.
¶ 24. Finally, as to whether the State's action in reincarcerating Parham has a rational, nonarbitrary connection to a legitimate purpose, the following interests are present. Parham has a substantial interest in retaining his freedom, as was noted in Kelch, 10 F.3d at 688: "Deprivation of liberty, next to deprivation of life, is the greatest punishment a state can impose upon an individual, and the importance of regaining one's liberty should not be undervalued." The State has the following interests: (1) appropriate punishment for criminals; (2) protection of the general population from such persons, though this interest is probably not as strong as in Kelch, where Parham apparently has broken no laws since his release; and (3) having the law applied in a legal manner by the judiciary. As in Kelch, we find that the balance of interests favor the State.
¶ 25. Finally, Parham argues that he is being improperly singled out as the only inmate who is subject to a reincarceration action among the many who were allegedly improperly released by numerous judges pursuant to § 47-7-47. Parham relies on James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), where the Supreme Court found a Kansas statute which allowed for recoupment of costs of counsel from indigent criminal defendants while treating these "debtors" more harshly than the usual civil judgment debtor unconstitutional as a violation of equal protection.
¶ 26. The State cites Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), Wayte v. United States, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), and United States v. Jennings, 724 F.2d 436 (5th Cir.1984). The applicable standard is provided in Wayte, 470 U.S. at 608-09, 105 S.Ct. 1524, where the Supreme Court stated:
[A]lthough prosecutorial discretion is broad, it is not "`unfettered.' Selectivity in the enforcement of criminal laws is ... subject to constitutional restraints." United States v. Batchelder, 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)(footnote omitted). In particular, the decision to prosecute may not be "`deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' "Bordenkircher v. Hayes, supra, [434 U.S. 357] at 364[98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)], quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 *472 L.Ed.2d 446 (1962), including the exercise of protected statutory and constitutional rights, see United States v. Goodwin, supra, [457 U.S. 368] at 372[102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)].
It is appropriate to judge selective prosecution claims according to ordinary equal protection standards. See Oyler v. Boles, supra. Under our prior cases, these standards require petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).
¶ 27. First, we find that the action proceeding here is a "prosecution" as contemplated by the rule just stated. Assuming that there is a discriminatory effect, this Court has been presented with no evidence showing that the action against Parham was motivated by a discriminatory purpose. Parham's allegation of an equal protection violation is without merit.
¶ 28. This Court concludes that Judge Frank Russell released Robert Daniel Parham without any legal authority to do so. As such the orders of the Monroe County Circuit Court of July 19, 1994, and August 5, 1994, which ordered Parham's release, are declared void and are hereby vacated by this Court. This Court further orders that Robert Daniel Parham be immediately returned to the custody of the MDOC.
¶ 29. PETITION FOR WRIT OF MANDAMUS AND/OR OTHER APPROPRIATE EXTRAORDINARY WRIT GRANTED.
PRATHER, C.J., SULLIVAN and PITTMAN, P.JJ., and SMITH, MILLS and WALLER, JJ., concur.
McRAE and JAMES L. ROBERTS, Jr., JJ., not participating.