846 So.2d 1048 (2003)
Dexter Allen NORWOOD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01027-COA.
Court of Appeals of Mississippi.
May 27, 2003.
*1050 Jim Davis, Moss Point, attorney for appellant.
Office of the Attorney General, by Charles W. Maris Jr., attorney for appellee.
EN BANC.

ON MOTION FOR REHEARING
IRVING, J., for the court.
¶ 1. The motion for rehearing is granted, the original opinion is withdrawn, and this opinion is substituted.
¶ 2. Dexter Allen Norwood pleaded guilty to kidnaping, attempted forcible sexual intercourse, and attempted rape. He was sentenced to twenty-two years for the kidnaping and ten years each for the attempted rape and attempted forcible intercourse, with the ten years for attempted forcible intercourse to run consecutively to the ten years for attempted rape. The two ten-year terms are to be served day for day without hope of parole or probation and are to run concurrently with the twenty-two year sentence for kidnaping.
¶ 3. Feeling aggrieved, Norwood has appealed and assigns error to the trial court for including in its sentencing order language requiring that the ten-year sentences for attempted forcible intercourse and attempted forcible rape be "served day for day without the benefit of parole or probation pursuant to section 47-7-3 of the Mississippi Code of 1972 as amended." We find that the included language was surplusage with no legal effect and that Norwood's sentence should be affirmed.

FACTS
¶ 4. Norwood's initial sentencing order provided that Norwood's entire sentence was to be served "under section 99-19-81, Miss.Code of 1972, as amended, said sentence being without hope of parole or probation." This order was entered on March 29, 2000. On April 7, 2000, Norwood filed a motion to correct what he called a scrivener's error. In this first motion, Norwood sought to remove from the initial sentencing order language indicating that he had been sentenced as a habitual offender under Mississippi Code Annotated § 99-19-81 (Rev.2000). The trial court, by order entered on April 11, 2000, granted the motion and removed the reference to the stated code section. However, in the *1051 corrected order, the trial court retained the language indicating that the sentence was "without hope of parole or probation."
¶ 5. On April 20, 2000, Norwood filed a second motion seeking to correct what he called a scrivener's error in the "corrected order." Specifically, he objected to the inclusion of the "without hope of parole or probation" language, arguing that the determination regarding parole or probation was to be made by the Department of Corrections, not the court. On June 2, 2000, the trial court entered what it called a "3rd Corrected Order"[1] in which it corrected the sentencing order to provide that only the two ten-year sentences for the sex crimes were to be served day for day without the benefit of parole or probation. This order was in contrast to the first corrected order which provided that the entire sentence was ordered served day for day without the hope of parole or probation. It is from this last corrected order that Norwood appeals.
¶ 6. The State, in addition to filing a brief, has filed a motion to dismiss arguing that Norwood is attempting to appeal from a conviction rendered pursuant to a guilty plea. The State argues that this attempt is prohibited by Mississippi Code Annotated § 99-35-101 (Rev.2000), which prohibits appeals "in any case where the defendant enters a plea of guilty."

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. We first consider the State's contention that this appeal should be dismissed as an attempt to appeal from a conviction on a plea of guilty. The State is correct that a defendant cannot appeal from a conviction on a plea of guilty. However, while the conviction itself cannot be appealed, an illegal sentence handed down pursuant to the plea is appealable. Trotter v. State, 554 So.2d 313, 315 (Miss. 1989). Therefore, the question is whether Norwood is attempting to appeal from a guilty plea. Since we do not find that to be the case, the State's motion to dismiss for lack of jurisdiction is not well taken and is hereby overruled.
¶ 8. Before proceeding to the merits of Norwood's argument, we note that Norwood filed his notice of appeal on June 23, 2000. The initial sentencing order was filed on March 29, 2000, and the initial corrected sentencing order was filed on April 11, 2000. The final corrected sentencing order was filed on June 2, 2000. Although the notice of appeal was filed within thirty days of the final corrected order, it was filed more than thirty days after the initial order. As stated, Norwood filed two post-trial motions, but neither of them was sufficient to toll the time for taking an appeal as specified in Rule 4(a) and (e) of Mississippi Rules of Appellate Procedure. As far as we can tell from the record, a motion for extension of time to file an appeal was not filed by Norwood in the court below.[2] Therefore, we conclude that when Norwood filed his notice of appeal, the time to prosecute a direct appeal from the initial sentencing order had long since expired because, as stated, his post-trial motions did not toll the running of the thirty-day appeal period.
*1052 ¶ 9. Only timely-filed motions for enlargement of time to file an appeal, for a new trial, and for judgment of acquittal notwithstanding the verdict can toll the running of the thirty-day appeal time. M.R.A.P. 4(e)(g). We know of no specific procedure to correct a scrivener's error in the judgment of conviction and sentence in criminal cases. In other words, Rule 60 of Mississippi Rules of Civil Procedure has no counterpart in Mississippi criminal procedure. We have no court-enacted rules of criminal procedure except as are found in the Uniform Rules of Circuit and County Court Practice; no counterpart to Rule 60 reposes in URCCC. However, we view Norwood's motions as motions for post-conviction relief even though neither the trial court nor the parties have characterized them as such.
¶ 10. The concurring opinion acknowledges precedent for converting certain post-trial motions to post-conviction relief motions but contends that this is not a proper case for such treatment. The concurring opinion does not cite any authority for this contention, that is, that in the interest of judicial economy, an appellate court is without authority to treat a trial court's ruling on a post-trial motion as a ruling on a motion for post-conviction relief. In the concurring opinion's view, the case of Bobkoskie v. State, 495 So.2d 497 (Miss.1986), is persuasive authority for the position that Norwood's post-trial motion should not be recast as a motion for post-conviction relief. While it is true that the Bobkoskie court said that the petition for writ of mandamus to the parole board should have been dismissed without prejudice to the prisoner's bringing a post-conviction relief motion, that was an admonition to the trial court. Id. at 499. What is significant, however, is that the Mississippi Supreme Court in Bobkoskie did just what we are doing here, that is, considered the matter under the Uniform Collateral Post-Conviction Relief Act (PCR Act). Id. at 500-01.
¶ 11. The concurring opinion argues that our treating Norwood's motions in the court below as post-conviction relief motions precludes Norwood from later "receiving the benefit that the post-conviction procedures provide for a one-time and careful consideration of all issues that might provide some relief from a guilty plea." To this assertion, we can only say that Norwood, not the court, chose to file the motion. He must bear the legal consequences. The concurring opinion also points out that a trial court has the authority, prior to the expiration of the term to modify a sentence handed down during the term. We do not disagree with this observation, and nothing in this opinion is intended to suggest that the trial court does not possess this authority. However, we point out that, according to the State of Mississippi Judiciary Directory and Court Calendar of which we take judicial notice, the March 2000 term of court of Harrison County expired on March 31, seven days prior to the filing of Norwood's first motion.
¶ 12. Additionally, the concurring opinion cites a number of pre-Post-Conviction Collateral Relief Act cases for the proposition that a trial court possesses the inherent authority or "power to correct a judgment rendered at a former term of the court." We do not disagree with this position, but the correction cannot be made in a procedural vacuum. Whatever may have been the procedure prior to the enactment of the PCR Act, it seems clear now that a motion for post-conviction relief is the vehicle for addressing errors which are not appropriately covered by a direct appeal. Miss.Code Ann. § 99-39-3 (Rev.2000).
¶ 13. Mississippi Uniform Post-Conviction Collateral Relief Act is the legal *1053 vehicle for judicial redress of claims by prisoners that "the trial court was without jurisdiction to impose sentence." Miss. Code Ann. § 99-39-5 (Rev.2000). Here, Norwood claims that the trial court was without statutory jurisdiction to impose the "day for day without the benefit of parole or probation" provision. Therefore, we find that the trial court possessed the authority to rule on Norwood's motions.
¶ 14. As stated, Norwood's first motion was filed on April 7, 2000. The only relief requested by Norwood in this motion was the elimination of that portion of the order which stated that he was being sentenced as a habitual offender. As stated, the initial sentencing order contained the "day for day without the benefit of parole or probation" provision, but Norwood did not attack this provision. Perhaps, he may have thought that the provision was subsumed in the habitual offender provision and that would be taken care of by getting the habitual offender provision eliminated. If that was Norwood's view of things, then there was no need to file an additional motion. In any event, a corrected order was entered on April 11, 2000. In this corrected order, as stated, the portion of the initial sentencing order defining Norwood's status as a habitual offender was stricken, but the portion defining the sentence as being without parole or probation was left in. Norwood did not appeal from this order. Instead, he filed a second motion on April 19, 2000.
¶ 15. As we have already pointed out, in this second motion, Norwood attacked the trial court's authority to include the "without hope of parole or probation" provision in the sentencing order. We find that the second motion was a successive PCR motion barred by the provisions of Mississippi Code Annotated § 99-39-23 (Rev.2000). However, when fundamental rights are at stake, the procedural bar may be waived. Ivy v. State, 731 So.2d 601, 603(¶ 13) (Miss.1999); Sneed v. State, 722 So.2d 1255, 1257(¶ 11) (Miss.1998). We hold that the allegation that the trial court exceeded its authority in the sentencing process implicates a fundamental right, for such a sentence would in all likelihood be illegal. Therefore, just as the Sneed court, notwithstanding the procedural bar, addressed an allegation that the defendant's sentence was illegal, we address Norwood's contention that the trial court was without authority to include the "without hope of parole or probation" provision in the sentencing order.
¶ 16. We agree with Norwood that the trial court should not have included the restrictive language in the sentencing order since the statute which prohibits the grant of parole to persons convicted of a crime after June 30, 1995, (Mississippi Code Annotated section 47-7-3(1)(g) (Rev. 2000)) is a mandate to the parole board and not to the courts. Gardner v. State, 514 So.2d 292, 294 (Miss.1987). Inclusion of such restrictive language in the sentencing order is unnecessary and surplusage. Id. While we find that the language was surplusage and should not have been included, we nevertheless decline to grant any relief because the inclusion of the restrictive language does not in fact impair the fundamental right to be free from an illegal sentence since Norwood's sentence is not illegal.
¶ 17. The concurring opinion recognizes that the trial judge, by including the restrictive language, cannot tie the hands of the parole board. Nevertheless, the concurring opinion says it was proper for the trial judge to include the questioned language because inclusion of the language did not make the sentence illegal. This assertion seems to fly in the face of Gardner. But to be clear, we do not hold or suggest that inclusion of the restrictive *1054 language in the second corrected order made the sentence illegal, just that, pursuant to the teachings in Gardner, it was not the province of the trial court to address the propriety of parole in the sentencing order. Therefore, we affirm the decision of the trial court notwithstanding the verbiage in the sentencing order.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF ATTEMPTED RAPE IN CAUSE NO. B1-98-1012 AND SENTENCE OF TEN YEARS; COUNT II, CAUSE NO. B1-99-295, KIDNAPING, AND SENTENCE OF TWENTY-TWO YEARS; COUNT III, ATTEMPTED FORCIBLE SEXUAL INTERCOURSE AND SENTENCE OF TEN YEARS WITH SENTENCE FOR ATTEMPTED RAPE TO RUN CONSECUTIVELY TO SENTENCE IN COUNT III; THESE SENTENCES SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT II FOR A TOTAL OF TWENTY-TWO YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, P.J., BRIDGES, LEE, MYERS AND CHANDLER, JJ., CONCUR. THOMAS, J., CONCURS IN RESULT ONLY. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J. GRIFFIS, J., NOT PARTICIPATING.
SOUTHWICK, P.J., concurring.
¶ 19. The majority finds that the defendant after his guilty plea was given a sentence whose terms included surplusage. Successive motions to correct the sentence were not totally successful. While the motions were being considered, the time for taking an appeal expired. The majority converts the motions into requests for post-conviction relief, finds that the appeal from the denial of such relief was timely brought, but finds that the language was surplusage.
¶ 20. I would prefer just joining the majority, as our disagreement here has no practical effect on this case. However, since the lead opinion will now stand as precedent, I wish to discuss three matters that I believe should have been analyzed differently. First, it appears to me that the requests for correction of sentence made immediately after the sentence was entered should not be shifted into the post-conviction relief regime, which neither party nor the lower court considered appropriate. Secondly, I find no erroreven surplusage errorin the language in the sentence. Finally, I find that the appeal was untimely filed and should be dismissed.
¶ 21. Norwood's motions were seeking a correction of his sentence. No precise procedure for that exists, as the majority discusses. Though there are precedents in which certain motions have been converted into post-conviction relief motions, I believe it is inappropriate to do so here. This effectively blocks Norwood from later utilizing the post-conviction procedures for his one-time consideration of all issues that might be appropriate to raise. The majority notes this but suggests that Norwood is merely being made to lie in a bed of his own choosing. With respect, I believe that Norwood is being placed in a bed of the majority's choosing.
¶ 22. Each time Norwood returned to court through his filings, he and the trial court and the prosecutor considered that Norwood was still attempting to get his initial sentencing order correct. If at some point there no longer was authority for the court to make further alterations, I *1055 find that the defendant should not automatically and unknowingly be shifted into an entirely different procedure that will be available to him only once. Such an inadvertent waiver of post-conviction rights should not lightly be exacted.
¶ 23. If there was no other procedure to utilize, and if post hoc imposing of the label of post-conviction relief serves no meaningful purpose either to the court or to the parties, then we should find simply that Norwood's successive motions at some stage became nullities. I so find and also find that the appeal that dates from the last such null motion was untimely.
1. Procedure for considering motions to correct sentence
¶ 24. Norwood was sentenced on March 29, 2000. On April 7 he filed a motion to correct, which was granted in part on April 11. Norwood filed his second motion on April 20, which again was granted in part on June 2. Both motions were attempting to remove references to the unavailability of parole or probation. The notice of appeal was then filed on June 23, 2000.
¶ 25. We must analyze this appeal in light of various precedents that have permitted trial judges to correct sentences that as originally pronounced were beyond the court's authority. For example, when it was discovered that a statute permitting a harsher sentence for sale of marihuana was not yet in effect at the time that the defendant committed his offense, the Supreme Court held that the trial judge had the authority to correct it:
When sentences are imposed in excess of statutory authority, such sentences should be corrected by the trial courts on motion to correct sentence which may be filed and heard in term time or in vacation.
King v. State, 304 So.2d 650, 651 (Miss. 1974). In that case, the Supreme Court encouraged trial courts to make the corrections when brought to their attention and not require "the expense and delay occasioned by an appeal to this Court." Id.
¶ 26. Just as pointedly, the Supreme Court held that the "`power to correct a judgment rendered at a former term of the court, so as to strike out the judgment erroneously entered by mistake of the clerk and substitute for it the wholly different judgment actually entered by the court, is a power inherent in every court, and is not derived from statute.'" Bynum v. State, 222 Miss. 632, 640, 76 So.2d 821, 825 (1955), quoting Wilson v. Town of Hansboro, 99 Miss. 252, 54 So. 845, 847 (1911). A more recent decision held that "undoubtedly there are circumstances wherein a court does retain the authority to correct clerical errors in its orders...." Sisson v. State, 483 So.2d 1338, 1339 (Miss. 1986). In addition, a trial "court does have inherent power to correct judgments obtained through fraud, accident or mistake, which is reviewable through a writ of error coram nobis." Harrigill v. State, 403 So.2d 867, 869 (Miss.1981).
¶ 27. What these cases hold is that there is inherent authority for a trial judge to correct both clerical and more significant errors that appear in a criminal judgment. The only case that named a specific procedure that should be followed was Harrigill, which named the writ of error coram nobis as appropriate. If Harrigill canvassed the authorities and properly identified the sole procedure, then it is quite relevant that the later-adopted post-conviction relief statutes explicitly displaced the writ of habeas corpus and the writ of error coram nobis. Miss.Code Ann. § 99-39-3(1) (Rev.2000). This statute states that these writs were "abolished" and the "relief formerly accorded by such writs may be obtained by an appropriate *1056 motion under" the post-conviction relief statutes. Id. That phrasing is unfortunate, as the constitutionally protected writ of habeas corpus cannot be abolished by statute. U.S. CONST. art. I, § 9; MISS. CONST. art. 3, § 21 (1890). It is more accurate to say that the procedures for the writ of habeas corpus in post-conviction matters have been established by these statutes, but the writ itself remains alive. Walker v. State, 555 So.2d 738, 740 (Miss.1990). Since the writ of error coram nobis has no constitutional permit, it more readily may be said to have been abolished by these statutes. Regardless, the post-conviction relief statutes were enacted in 1984 and prior caselaw on altering sentences is suspect. 1984 Miss. Laws ch. 378. I will try to show proper suspicion about those older authorities as I analyze what occurred here.
¶ 28. Consistent with the interpretation that a trial court's inherent authority in this area is now explicitly channeled through the post-conviction relief statutes are the numerous precedents that have condemned the practice of trial courts' modifying sentences months if not years after they were entered. The Supreme Court has held that there is no inherent power to alter or amend a sentence. Mississippi Commission on Judicial Performance v. Russell, 691 So.2d 929, 944 (Miss. 1997). The practice being criticized in that and related cases is for a judge months after a valid sentence has been entered to reduce and even suspend that sentence. Russell, 691 So.2d at 932; Mississippi Commission on Judicial Performance v. Sanders, 708 So.2d 866, 872 (Miss.1998); Harrigill, 403 So.2d at 868-69.
¶ 29. In none of those cases do I find that the original sentence was illegal. Instead, the trial court was acting as a quasi-parole board to determine whether a reduction was justified. Still, the Supreme Court has held that once the term of court expires in which the original sentence was entered, the authority to alter the sentence is extinguished. Kennedy v. State, 732 So.2d 184, 186 (Miss.1999). What is crucial is that a motion to correct a sentence be filed prior to the end of the court term; it can then be ruled upon in due course even if the term has expired. Miss.Code Ann. § 11-1-16 (Rev.1991); Presley v. State, 792 So.2d 950, 954 (Miss.2001).
¶ 30. There are a few contrary indications in the caselaw. It has occasionally been emphasized that there is no right to modify a sentence when the sentence is a lawful one, suggesting there may be authority when the sentence is unlawful. Mitchell v. State, 561 So.2d 1037, 1039 (Miss.1990). In Mitchell, the State and trial judge erroneously believed that the original sentence had been illegal. The trial judge had stated at the original sentencing hearing that the defendant would be barred from receiving parole, but the actual sentencing order did not contain that limitation. Therefore, though that limitation would have been illegal, it was not in the sentence. Mitchell, 561 So.2d at 1038-39.
¶ 31. Another contrary indication is that the post-conviction relief statutes likely are unnecessary to attack an illegal sentence. Correction of an improper sentence is a fundamental right and cannot be restricted by the successive motion or statute of limitation rules of the post-conviction relief statutes. Sneed v. State, 722 So.2d 1255, 1257 (Miss.1998). If such a claim is allowed to proceed regardless of specific prohibitions in the post-conviction statutes, then arguably the prisoner's right to bring a claim is independent of whatever might be said statutorily about procedure.
¶ 32. Nonetheless, the most reasonable interpretation of the precedents is that *1057 once all motions have been resolved that were filed in the term of court in which sentencing occurred, the proper means to complain of sentencing error is through the post-conviction relief statutes. The exact procedural mechanism during the term of court is not altogether clear. There are precedents that hold that the right for a defendant to file a motion for new trial within ten days does not include filing a motion for reconsideration of a sentence. URCCC 10.05 (criminal defendant has 10 days to file for a new trial); Dickerson v. State, 731 So.2d 1082, 1085 (Miss.1998) (Rule 10.05 inapplicable for resentencing), overruled on other grounds in Presley, 792 So.2d at 953. Whatever the procedure, the cited precedents reveal that trial judges have the authority to modify during the court term.
¶ 33. Now I look at the application of these principles to what Norwood attempted to do. Harrison County has monthly terms of court. MISSISSIPPI SECRETARY OF STATE, JUDICIARY DIRECTORY & COURT CALENDAR 30 (2002). It appears that the first motion filed, which was on April 7 after Norwood's sentencing on March 29, was seeking relief from a sentence after the term ended. Regardless, his last motion on June 2 certainly was beyond the term of court.
¶ 34. The majority takes this defect and corrects it by fitting Norwood's motions within post-conviction relief procedures. The filings did not have the form of motions under those statutes. For example, the April 19 motion contains four paragraphs. They described the previous motions and orders on sentencing, explained why counsel believed that it is for the Department of Corrections to determine parole and probation eligibility, and requested that the language be removed. Had this been a motion under the post-conviction relief statutes, various assertions needed to be made about facts within and outside Norwood's knowledge, and Norwood himself was to verify the motion under oath. Miss.Code Ann. § 99-39-9 (Rev.2000). That form and verification are absent.
¶ 35. Through the post-conviction relief motion, prisoners have a "procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal." Miss.Code Ann. § 99-39-3(2) (Rev.2000). What Norwood instead was attempting was to correct something that had occurred at trial and which was properly reviewable on appeal. The illegality of a sentence is appealable despite a guilty plea. Berry v. State, 722 So.2d 706, 707 (Miss.1998).
¶ 36. When a motion with a different title has been transformed into a post-conviction relief motion, it has usually been obvious that the prisoner was actually seeking such relief but was avoiding or was ignorant of the proper designation. Williams v. Castilla, 585 So.2d 761, 763 (Miss.1991) (habeas corpus); Grubb v. State, 584 So.2d 786, 788 (Miss.1991) (sought to escape successive writ bar by using label "habeas corpus"); Moore v. Ruth, 556 So.2d 1059, 1061 (Miss.1990) (habeas corpus). In an earlier precedent, however, the court held that a petition requesting a writ of mandamus to the Parole Board should have been dismissed without prejudice to the prisoner's bringing a post-conviction relief motion. Bobkoskie v. State, 495 So.2d 497, 499 (Miss. 1986). The Supreme Court did nonetheless address whether the appeal, if considered as an appeal from denial of post-conviction relief, had any merit. It found that it did not. Id.
¶ 37. The majority uses this last element of Bobkoskie to find support for its *1058 conversion theory. Alternative reasoning is standard appellate practice. Since the Bobkoskie court had already found that the proper procedure was to have dismissed at the trial court without prejudice, its ruling on the merits might similarly be without prejudice to a later post-conviction relief motion. I have no objection to such a resolution here. I too would be willing to say that though the trial court ran out of procedure to consider Norwood's continuing efforts to correct his sentence and should have dismissed the motion, we could also look at the matter in the alternative and find no merit in the motion. In fact, I do so find. Bobkoskie supports that the one-time post-conviction remedy was not unknowingly exhausted by Norwood. But that is noted only as an alternative.
¶ 38. Traditionally, when courts reconfigure proceedings, it is in order to further a sufficient interest such as judicial efficiency without sacrificing any rights of the parties. The majority finds that this statement breaches the Golden Rule of appellate reasoning, which is a failure to cite authority. Maybe so. Perhaps on occasion, though, an appellate court should stand back from its cut and paste endeavors and seek unifying principles, such as there are. I find that one such pervasive principle is that procedural rules provide order and predictability, protecting parties and the courts from many scourges. Rules may not be applied when, for example, a suspension serves the "interest of expediting decision, or for other good cause" in the case. M.R.A.P. 2(c). A similar principle was applied to recasting a mislabeled filing as one for post-conviction relief:
With regard to their claim of ineffective assistance of counsel and, as well, their specific claim that they were denied their right of allocution before the Circuit Court, the Jaco brothers asked in the alternative that their papers be treated as an application for post-conviction relief. Common sense, judicial efficiency and long-standing precedent suggest we ought allow such a process.
Jaco v. State, 574 So.2d 625, 635 (Miss. 1990).
¶ 39. I find here no serving of the interests of "common sense [or] judicial efficiency," nor support in precedent to reform the motions into post-conviction relief papers. To do so prejudices Norwood should he later wish a broader consideration of the issues that arose from his plea. The choice being made is solely by this Court. The trial court and the parties did not consider the motions under those statutes. I especially find no reason to do so when the problematic language in the sentence is found by the majority only to be surplusage.
2. The parole and probation language is proper
¶ 40. The majority holds that it is improper for a sentence to include the language "without hope of parole or probation." That sentencing language surely is incorrect when by statute a prisoner is eligible for either. The Parole Board and not the trial court has jurisdiction over parole. E.g., Shanks v. State, 672 So.2d 1207, 1208 (Miss.1996). Yet that does not mean that when a person is ineligible for probation or parole, that the sentence must be silent about that fact.
¶ 41. The difference between a trial court's unauthorized attempt to remove eligibility for parole and the court's referring to statutory ineligibility should not be confused:
Brown claims that the wording of the sentencing order turned his twenty (20) year sentence on the rape conviction into a mandatory sentence, thereby revoking his parole eligibility. However, exclusive *1059 power over the granting and revoking of parole is vested in this State's parole board. Generally, a trial court has no authority to remove or a revoke a prisoner's parole eligibility. Certain statutes specify that a trial court may or must impose a sentence "without the possibility of parole." But this sentencing authority is separate and distinct from the parole board's authority to grant or revoke parole. Here the trial court's sentencing options upon a conviction of rape did not include imprisonment without parole. Therefore, the trial court had no authority to revoke or limit Brown's parole eligibility.

Brown v. State, 731 So.2d 595, 598-99 (Miss.1999) (citations omitted, emphasis added). The Court went on to say "that where the trial court has no statutory authority to limit parole, language purporting to do so is without legal effect. Language contained in a sentencing order which amounts to conditions which the trial court has no authority to impose `would be treated as surplusage and would not affect the enforcement of the valid portion of the sentence.' Cain v. State, 337 So.2d 935, 936 (Miss.1976)." Brown, 731 So.2d at 599.
¶ 42. Quite obviously, ineligibility for parole is something that exists; indeed, it is mandatory in some cases. When "the trial court has no statutory authority to limit parole, language purporting to do so is without legal effect." Id. That is not our case. Obviously, there are statutory commands to bar probation and parole. In a precedent cited by the majority, the Supreme Court found that mentioning such statutory language is "unnecessary and surplusage." Gardner v. State, 514 So.2d 292, 294 (Miss.1987). Yet it is not error to do so. I can find no precedent that referring to parole in any way invalidates the sentence if by statute the person is ineligible for parole because of the kind of crime that he has committed. The majority agrees that the sentence should stand. A trial judge cannot tie the Parole Board's hands. The legislature can, however.
¶ 43. A sentencing order that restates a statutory prohibition on probation or parole says more than it must, but it does not say more than it may. Perhaps this captures the inconsequential disagreement on the sentence issue that I have with the majority. Though Gardner uses the language of "unnecessary and surplusage," I find that there are several situations in which it is quite artificial for a sentence not to refer to the ineligibility for probation and parole. For a sentencing order to provide for life imprisonment without the possibility of probation or parole for capital murder when a jury assesses that penalty is not illegal; it simply states the accurate sentence. Miss.Code Ann. § 99-19-101(1) (Rev.2000). A cursory search reveals that the Supreme Court has recently affirmed without comment a sentence that was without the possibility of probation or parole. Smith v. State, 835 So.2d 927, 930 (Miss.2002). So have we. Collins v. State, 817 So.2d 644, 660 (Miss. Ct.App.2002). Sentencing orders quite naturally often indicate the entirety of the statutory sentence.
¶ 44. I do not discuss whether Norwood's sentence was for a crime that the legislature has stated could not result in probation or parole. My disagreement with the majority is whether there is anything wrong with the practice of noting a statutory bar to probation or parole in a sentence.
3. Dismissal of Appeal
¶ 45. Regardless of the question of the proper procedural mechanism for a correction of a sentence even during the term of court in which the first sentence was pronounced, *1060 Norwood never received the relief that he wanted. Once the term of court ended and any motion pending at that time was ruled upon, Norwood had thirty days from the last operative order to file a notice of appeal. M.R.A.P. 4(a). Norwood did not file his notice of appeal until it was too late.
¶ 46. I would dismiss the appeal.
McMILLIN, C.J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Although the order was entitled "3rd Corrected Order," our examination of the record indicates that it was the third order but only the second corrected order.
[2] In his various motions, Norwood sought to correct a scrivener's error in the order entered on March 29, 2000. However, in the criminal context, there is no counterpart to Rule 60 of Mississippi Rules of Civil Procedure which allows correction of clerical mistakes at any time prior to transmission of the record to the appellate court.