# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00585-COA

**LATORIA BROWNLEE**                                           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI AND MISSISSIPPI**            **APPELLEES**
**DEPARTMENT OF CORRECTIONS**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2024 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACOB WAYNE HOWARD |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DANIEL KIM |
| |     WILLIAM R. COLLINS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED, RENDERED, AND |
| | REMANDED - 08/05/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1. Latoria Brownlee pled guilty to first-degree murder. By statute, a person convicted of first-degree murder is *in*eligible for parole. However, as part of Brownlee's plea bargain, the State expressly agreed that she should be sentenced to life imprisonment *with* the possibility of parole. Consistent with Brownlee's plea agreement, the circuit court sentenced her to life in the custody of the Mississippi Department of Corrections (MDOC) *with* eligibility for parole and stated that Brownlee "shall be eligible for parole." After Brownlee began serving her sentence, MDOC did not provide her a parole-eligibility date. Brownlee requested a parole-eligibility date via MDOC's Administrative Remedy Program (ARP), but

MDOC denied her request, stating that she was not eligible for parole based on the parole-eligibility statute. Brownlee sought judicial review in the Rankin County Circuit Court, the circuit court affirmed MDOC's ARP decision, and Brownlee appealed.

¶2. We conclude that MDOC, an administrative agency, lacks the authority to disregard the sentencing court's judgment and sentence. Therefore, we reverse and render the circuit court's decision affirming MDOC's denial of Brownlee's ARP request. We remand the case to MDOC to determine Brownlee's parole-eligibility date.

## FACTS AND PROCEDURAL HISTORY

¶3. In 2018, a Clay County grand jury indicted Brownlee for capital murder for a killing that occurred in November 2017. In April 2020, Brownlee pled guilty to the lesser-included offense of first-degree murder. During her plea colloquy, the court asked Brownlee, "[D]o you understand the Court has only one sentence it can impose; that is life imprisonment with the possibility of parole in this case?" Brownlee answered in the affirmative. The court found that Brownlee's plea was voluntarily and intelligently made and that there was a sufficient factual basis for the plea. The court and counsel then stated as follows:

> BY THE COURT: Very well. The only sentence available to the Court on a charge of first degree murder is life in the Mississippi Department of Corrections. This first degree murder carries with it the possibility of parole as I understand it. Is that your understanding?
>
> BY MS. WILLIAMS [(defense counsel)]: Yes, sir, that is my understanding.
>
> BY THE COURT: Is that your understanding?
>
> BY MR. AMOS [(assistant district attorney)]: And that is the State's understanding, Your Honor.

2

[BY THE COURT]: Ms. Brownlee, is that your understanding?

[BROWNLEE]: Yes.

[BY THE COURT]: You are sentenced to life in the Mississippi Department of Corrections with the possibility of parole on the lesser included offense of first degree murder.

¶4. The same day, the court entered a sentencing order with the following title:

**SENTENCING ORDER**
**LIFE WITH THE POSSIBILITY OF PAROLE**

The court's order also expressly stated that Brownlee "shall be eligible for parole."

¶5. MDOC did not assign Brownlee a parole-eligibility date after she began serving her sentence. Brownlee filed an ARP request for a parole-eligibility date. MDOC's first-step response acknowledged that Brownlee's sentencing order stated she was eligible for parole; however, MDOC stated that a sentence for first-degree murder was not eligible for parole.[1] Therefore, MDOC denied Brownlee's request. Brownlee filed a request for a second-step review, attaching her sentencing order and the transcript of her plea hearing. However, MDOC confirmed its first-step response and denied Brownlee's request.

¶6. Brownlee then filed a petition for judicial review in the Rankin County Circuit Court.[2]

---

[1] At the time of Brownlee's offense, Mississippi Code Annotated section 47-7-3(1)(g)(i) provided that "[n]o person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2 . . . shall be eligible for parole." Miss. Code Ann. § 47-7-3(1)(g)(i) (Supp. 2016). First-degree murder was a crime of violence. Miss. Code Ann. § 97-3-2(1)(b) (Rev. 2014). Subsequently, the Legislature substantially revised the parole-eligibility statute, but a sentence for first-degree murder remains ineligible for parole. *See* Miss. Code Ann. § 47-7-3(1)(d) (Supp. 2024).

[2] Brownlee is incarcerated in Rankin County. *See Boyett v. Cain*, 397 So. 3d 481, 484 (¶10) (Miss. 2024) (stating that venue for a petition for judicial review of an ARP decision "may be appropriate in the county in which the prisoner resides, as long as a

She argued that the sentencing court had expressly sentenced her "to life imprisonment '*with* the possibility of parole'" and that MDOC lacked "the authority to reject the [sentencing] court's final sentencing judgment and require [her] to serve her sentence *without* the possibility of parole." In response, MDOC argued that the parole-eligibility statute made clear that a person convicted of first-degree murder was *not* eligible for parole. MDOC also noted that "the authority to say what constitutes a crime, and what punishment shall be inflicted is in its entirety a legislative question." *Jones v. State*, 122 So. 3d 698, 702 (¶12) (Miss. 2013) (brackets omitted). MDOC acknowledged that Brownlee's case presented a "dilemma" for the agency: whether to follow "the plain language of the statute" or "the plain language of the sentencing [o]rder." However, MDOC argued that the sentencing order was "in direct conflict" with the parole-eligibility statute and that the sentencing court "did not acknowledge" the conflict. The agency stated that it believed "the appropriate course of action" was "to apply the plain language of the parole eligibility statute."

## ANALYSIS

¶7. "This Court reviews the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." *Parker v. Mallett*, 298 So. 3d 994, 997 (¶7) (Miss. 2020). "We review the record and the agency's findings, but do not reweigh evidence or substitute our judgment." *Id.* However, we review questions of law de novo. *Id.* Whether MDOC had the authority to review

substantial act or event that caused the alleged injury occurred in that same county").

4

Brownlee's sentence of life with eligibility for parole is a question of law that we review de novo. *Conley v. Epps* (*Conley III*), 150 So. 3d 702, 704 (¶4) (Miss. 2014).

¶8.     Brownlee argues that MDOC does not have the authority to disregard the clear terms of the sentencing court's judgment. Brownlee relies primarily on the Mississippi Supreme Court's opinion in *Conley III*. Glen Conley was convicted of capital murder for a killing that occurred in May 1994. *Conley v. State* (*Conley I*), 790 So. 2d 773, 779 (¶1) (Miss. 2001). At the time of Conley's crime, there were only two possible sentences for capital murder: death or life with the possibility of parole. *Id.* at 803 (¶115). Prior to Conley's trial, the statute was amended to authorize a sentence of life without the possibility of parole. *Id.* After Conley was found guilty, the jury was instructed to determine whether he should be sentenced to death or life *without* the possibility of parole. *Id*. at (¶116). After the jury was unable to reach a sentencing verdict, "the trial court sentenced Conley to life without parole, a punishment that was not permitted under the statute in effect when the crime was committed." *Id.* at (¶117). On direct appeal, Conley argued that this sentence violated the Ex Post Facto Clause of the United States Constitution because a sentence of life without parole was not authorized at the time of the killing. *Id.* However, our Supreme Court rejected Conley's argument, holding that he waived any ex post facto claim by (1) requesting a jury instruction with a life-without-parole option; (2) asking the jury in closing arguments to "spare [his] life" and "sentence him to life without parole or probation"; and (3) failing to object when the judge specifically instructed the jury that Conley would be sentenced to "life without parole" if the jury could not agree on a sentencing verdict. *Id*. at 804 (¶121).

¶9. After Conley began serving his sentence, he requested a parole-eligibility date from MDOC, once again arguing that his sentence of life without parole violated the Ex Post Facto Clause. *Conley v. Epps* (*Conley II*), 150 So. 3d 715, 716 (¶4) (Miss. Ct. App. 2013). However, MDOC denied Conley's request, and the circuit court affirmed MDOC's decision. *Id.* On appeal, this Court also affirmed, holding that res judicata barred Conley's ex post facto claim because the Supreme Court had already considered and rejected that claim in *Conley I*. *Conley II*, 150 So. 3d at 716 (¶5).

¶10. The Supreme Court granted Conley's petition for a writ of certiorari and affirmed "[u]nder different reasoning." *Conley III*, 150 So. 3d at 704 (¶3). A unanimous Supreme Court stated that this Court had erred by confusing Conley's ARP appeal with a motion for post-conviction relief (PCR). *Id.* at (¶5). The Supreme Court stated:

> By applying the doctrine of res judicata, the Court of Appeals treated Conley's complaint as a [PCR] petition . . . . Treating Conley's complaint as a [PCR] petition . . . was inappropriate because Conley sought judicial review—an appeal—of [MDOC's] denial of his application for a parole eligibility date. However, we note that Conley's instant claim mirrors his direct appeal in 2001. He restates his original ex post facto claim by articulating in his complaint that [MDOC's] decision to enforce an illegally imposed sentence is a denial of due process. Thus, once again, Conley attacks the legality of his sentence, and the Court will not reconsider the legality of his sentence.
>
> Aside from his ex post facto claims, Conley argues that, when the language in a trial court's sentencing order revokes parole eligibility without the lawful authority to do so, the parole board may disregard that portion of a sentencing order as mere surplusage. *See Brown*[ *v. State*], 731 So. 2d [595,] 598-99 [(Miss. 1999)]; *Kincaid v. State*, 711 So. 2d 873, 876 (Miss. 1998); *Temple v. State*, 671 So. 2d 58, 59 (Miss. 1996); *Cain v. State*, 337 So. 2d 935, 936 (Miss. 1976). However, Conley misinterprets the Court's holdings in the above referenced cases.
>
> **Conley correctly contends that, when a trial judge's parole limitation is**

6

**illegal, [MDOC] may strike the parole limitation language as mere surplusage and affirm the remainder. However, a court—such as the Mississippi Supreme Court—must first determine that the parole limitation is illegal.** *See Brown*, 731 So. 2d at 599 (holding that the trial court had no authority to revoke Brown's parole eligibility, thus the "completely served" language in Brown's sentence is surplusage) (citing *Cain*, 337 So. 2d at 936; *Kincaid*, 711 So. 2d at 876; *Gardner v. State*, 514 So. 2d 292, 294 (Miss. 1987)). **In other words, the Court does not empower [MDOC] to determine whether the trial judge had the lawful authority to revoke parole eligibility, but, when a court determines the trial judge's parole limitation is illegal, [MDOC] may *then* strike the parole limitation language as mere surplusage.** In Conley's 2001 appeal, the Court did not find the language of the trial judge's sentence to be illegal; therefore, the instant case is without merit.

*Conley III*, 150 So. 3d at 704 (¶¶5-7) (bold emphasis added) (citations omitted).

¶11.    Presiding Justice Dickinson, joined by Justices Kitchens and King, concurred that the Court could not "reach the merits of Conley's ex post facto claim" given the "procedural posture" of the case. *Id.* at 705 (¶10) (Dickinson, P.J., specially concurring). However, they asserted that Conley's sentence was, in fact, unconstitutional and should be addressed at the Supreme Court's "first opportunity." *Id.* at 707 (¶21).

¶12.    Brownlee emphasizes *Conley III*'s holding that MDOC is not "empower[ed]" to determine for itself whether a sentencing order's parole limitation is "lawful." *Id.* at (¶7). Rather, "*a court . . .* must *first* determine that the parole limitation is illegal." *Id.* (emphasis added). *After* a court has made such a determination, MDOC "may *then* strike the parole limitation language as mere surplusage." *Id.* (emphasis added).

¶13.    In the prior cases the Supreme Court cited in *Conley III*, *a court* had declared that a sentencing order's parole limitation was illegal—i.e., MDOC did not make that determination itself. For example, *Brown* and *Kincaid* involved PCR motions challenging

7

language in sentencing orders that limited the defendants' eligibility for parole, and the Supreme Court held that the language was mere "surplusage" with no legal effect because a sentencing court lacks authority to limit parole eligibility. *Brown*, 731 So. 2d at 598-99 (¶¶4, 8); *Kincaid*, 711 So. 2d at 876 (¶15). *Cain* was a direct appeal in which the defendant challenged a provision in his sentencing order that prohibited his release on parole. *Cain*, 337 So. 2d at 936. The Supreme Court "deleted" that provision and affirmed the remainder of the sentencing order as "corrected." *Id.* In *Conley III*, the Supreme Court did not overrule any of these cases to the extent they held that a sentencing court lacks the authority to impose extra-statutory limitations on a defendant's eligibility for parole. Rather, *Conley III* simply clarified that **MDOC** is not "empower[ed] . . . to determine whether the trial judge had the lawful authority to revoke parole eligibility." *Conley III*, 150 So. 3d at 704 (¶7).

¶14. Here, Brownlee argues that MDOC ran afoul of the Supreme Court's holding in *Conley III* by unilaterally determining that her sentencing order is illegal and that she is not eligible for parole. That is, just as MDOC is not "empower[ed] . . . to determine whether the trial judge had the lawful authority to revoke parole eligibility," *id.*, MDOC also lacks authority to determine the legality of a final judgment imposing a sentence *with* parole eligibility. Likewise, MDOC may not disregard or refuse to follow the provisions of such a final judgment unless a court of competent jurisdiction "*first* determine[s]" that the judgment is "illegal." *Id.* (emphasis added).

¶15. MDOC, in contrast, argues that it cannot treat Brownlee's sentence as eligible for parole or give her a parole-eligibility date. MDOC emphasizes that as an executive branch

8

agency, it is bound to "follow statutes and, absent a declaration from the judicial branch regarding an interpretation of a statute, must decide what statutes mean." *King v. Miss. Mil. Dep't*, 245 So. 3d 404, 408 (¶11) (Miss. 2018). Here, the relevant statutes clearly provided at all relevant times that a person convicted of first-degree murder shall not be eligible for parole. *See supra* note 1. MDOC also emphasizes that "the authority to say what constitutes a crime, and what punishment shall be inflicted is in its entirety a *legislative* question." *Jones*, 122 So. 3d at 702 (¶12) (emphasis added) (brackets omitted). Finally, MDOC points out that the parole board, not the trial court, has "exclusive responsibility for the granting of parole." Miss. Code Ann. § 47-7-5(3) (Supp. 2024); *see Haynes v. State*, 811 So. 2d 283, 285 (¶6) (Miss. Ct. App. 2001).

¶16.     On its face, Brownlee's sentence appears to be illegal. "An illegal sentence is one that does not conform to the applicable penalty statute." *Young v. State*, 368 So. 3d 299, 304 (¶11) (Miss. 2023) (brackets and quotation marks omitted). The proper sentence for a defendant convicted of first-degree murder is "imprisonment for life in the custody of the Department of Corrections." Miss. Code Ann. § 97-3-21(1)(a) (Supp. 2024). The sentencing order need not address parole because applicable statutes make clear that a person convicted of first-degree murder is not eligible for parole. *See supra* note 1. Because Brownlee's sentencing order instead expressly declares her eligible for parole, Brownlee's sentence would appear to be "illegally lenient." The Mississippi Supreme Court "repeatedly has held that no error occurs when a defendant's sentence is illegally *lenient*." *Williams v. State*, 158 So. 3d 309, 313 (¶12) (Miss. 2015); *see also Sweat v. State*, 912 So. 2d 458, 461 (¶9) (Miss.

9

2005) ("[W]hen the error benefits the defendant in the form of a more lenient sentence, it is harmless error."); *Madden v. State*, 165 So. 3d 468, 470 (Miss. 2015) (Dickinson, P.J., objecting to the dismissal of the writ of certiorari) ("While [a defendant] has a constitutional right not to be subjected to an illegally excessive sentence," "the State has no constitutional protection from an illegally lenient sentence.").

¶17.    But even assuming that Brownlee's sentencing order imposed an illegal or illegally lenient sentence, MDOC lacked the authority to make that determination. We reach this conclusion based on the Mississippi Supreme Court's holding in *Conley III*. As discussed above, *Conley III* holds that MDOC is not "empower[ed] to determine" for itself that a parole limitation is "illegal." *Conley III*, 150 So. 3d at 704 (¶7). Rather, "a court—such as the Mississippi Supreme Court—must *first* determine that the parole limitation is illegal." *Id.* (emphasis added). Until then, MDOC is bound to follow the sentencing order—*even if MDOC believes the sentencing order is unlawful. Id.* MDOC has not identified any reason why *Conley III*'s holding would not apply equally to a sentencing order such as Brownlee's that purports to grant parole eligibility. This Court is bound to follow *Conley III*. Therefore, we conclude that MDOC erred by disregarding the clear terms of the judgment and sentencing order entered by the sentencing court in Brownlee's case.[3]

¶18.    Stated differently, the judgment in Brownlee's criminal case simply is not reviewable in this appeal. This appeal arises out of a petition for judicial review of an ARP decision pursuant to the ARP statutes. *See* Miss. Code Ann. § 47-5-807 (Rev. 2023). Brownlee's

---

[3] As noted above, MDOC acknowledged that the "plain language" of Brownlee's sentencing order stated that Brownlee "shall be eligible for parole."

10

ARP request and her subsequent petition for judicial review did not attack or seek to modify the judgment or sentence in her criminal case. Indeed, nothing in the ARP statutes authorizes MDOC or a reviewing court to modify or correct a judgment in the prisoner's separate criminal case. This is the essential point of the Supreme Court's unanimous opinion in *Conley III*. The Supreme Court stated that this Court had erred by "[t]reating Conley's complaint as a [PCR] petition . . . because Conley sought judicial review—an appeal—of [MDOC's] denial of his application for a parole eligibility date." *Conley III*, 150 So. 3d at 704 (¶5). The Supreme Court stated that it was "inappropriate" to treat an ARP appeal as if it were a PCR motion. Notably, three justices who concurred in the Court's unanimous opinion thought that Conley's sentence *was illegal*, but they nonetheless agreed that the Court could not "reach the merits of Conley's ex post facto claim" given the case's "procedural posture." *Id.* at 705 (¶10) (Dickinson, P.J., specially concurring).

¶19.    The dissent here would ignore the critical passage of *Conley III*, suggesting that the Supreme Court's reasoning "appears to be *dicta*." *Ante* at ¶33. The dissent believes that because the Supreme Court had already "approved" Conley's sentence in a prior appeal (*Conley I*), the Court's multiple statements in *Conley III* that MDOC lacked the authority to determine the legality of the sentence's parole limitation were all just "dicta." *Id.* We disagree. In fact, in *Conley II*, **this Court** held that MDOC properly enforced the parole limitation in Conley's sentencing order "[b]ecause the Mississippi Supreme Court [had] already reviewed and affirmed [Conley's sentence] in [*Conley I*]." *Conley II*, 150 So. 3d at 716 (¶5). The Supreme Court then granted certiorari **specifically** to explain that this Court

11

had "erred" and that MDOC's decision should be affirmed for a "**different** reason[]." *Conley III*, 150 So. 3d at 703-04 (¶¶1, 3, 8) (emphasis added). That different reason was that MDOC simply lacked the authority to declare that the sentencing order's parole limitation was illegal. *Id.* at 703-05 (¶¶4, 6-8). The Supreme Court **held** that MDOC must follow the terms of a circuit court's sentencing order until a court first determines that a provision of the sentencing order is illegal. *Id.* That holding applies equally to the express grant of parole eligibility in Brownlee's sentencing order. Per *Conley III*, neither an administrative agency nor the Rankin County Circuit Court possesses the authority to invalidate the final judgment and sentence entered by the Clay County Circuit Court in a separate criminal case. That is *Conley III*'s holding, not mere dicta.[4]

¶20. Aside from recharacterizing *Conley III*'s holding as "dicta," the dissent cites a series of cases that predate *Conley III*. The Supreme Court explained the significance of such cases in *Conley III*, 150 So. 3d at 704 (¶¶6-7). Like the petitioner in *Conley III*, the dissent "misinterprets the . . . holdings" of such cases. *Id.* at (¶6). These cases held that various orders that trial courts had entered pertaining to parole or probation were illegal and invalid because they conflicted with controlling statutes. However, none of these cases held that MDOC could decide for itself that a sentencing order was illegal and then refuse to follow the terms of the sentencing order. Rather, per the holding of *Conley III*, MDOC is bound to follow the sentencing order.

---

[4] *Cf. Rye v. State*, 356 So. 3d 188, 190-91 (¶¶6-8) (Miss. Ct. App. 2023) (explaining that when the Mississippi Supreme Court expressly disagrees with this Court's rulings, "we cannot dismiss the supreme court's disagreement as mere dictum" (brackets and quotation marks omitted)).

¶21. Accordingly, we cannot affirm the decisions of MDOC and the Rankin County Circuit Court declaring illegal the sentence entered by the Clay County Circuit Court in Brownlee's separate criminal case. Neither Brownlee nor the State has ever filed any motion to vacate, modify, or correct the final judgment or sentence in her separate criminal case. Nor has Brownlee ever filed a PCR motion challenging her conviction or sentence. The final judgment in Brownlee's criminal case remains undisturbed. This case involves only a request for judicial review of an ARP decision. Under the Supreme Court's holding in *Conley III*, this case is not an opportunity to review the correctness of the judgment in Brownlee's separate criminal case.

**CONCLUSION**

¶22. We reverse the decision of the circuit court that affirmed MDOC's denial of Brownlee's ARP request. We render judgment in Brownlee's favor. The case is remanded to MDOC to grant Brownlee's request for a parole-eligibility date.[5]

¶23. **REVERSED, RENDERED, AND REMANDED.**

    **BARNES, C.J., CARLTON, P.J., WESTBROOKS, McCARTY AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE AND WEDDLE, JJ.**

---

[5] Brownlee notes that at the time of her offense, the parole-eligibility statute provided that a parole-eligible prisoner sentenced to a term of life imprisonment would be eligible for parole after she "ha[d] served not less than ten (10) years of such life sentence." Miss. Code Ann. § 47-7-3(1) (Supp. 2016). She reasons that her parole-eligibility date should be determined based on this provision. MDOC has argued only that Brownlee is ineligible for parole and thus has not addressed the issue of how her parole-eligibility date could be determined. The issue may be addressed by the agency on remand.

13

**EMFINGER, J., DISSENTING:**

¶24. The cases are legion that state that parole eligibility is a matter of legislative grace. Accordingly, it is the legislature, not the judiciary, that determines the offenses for which a defendant may be eligible for parole. *See Blankenship v. State*, 308 So. 3d 883, 884-85 (¶5) (Miss. Ct. App. 2020). Based upon various legislative enactments, no one who has been convicted of murder since June 30, 1995, has been eligible for parole. Because I would find that the trial court was without authority to speak parole eligibility into existence for Brownlee, I respectfully dissent.

¶25. Brownlee was charged with capital murder for a killing that occurred in November 2017. Brownlee pled guilty to the lesser included offense of first-degree murder in April 2020. While she was lawfully sentenced to life in prison, Brownlee was not and is not *statutorily* eligible for parole. The transcript of the guilty plea hearing shows that the trial judge, the prosecutor, the defense attorney, and the defendant all *believed* that the only sentence the court could impose for a first-degree murder conviction was life with the possibility of parole. As a result, the trial court's order sentenced Brownlee "to serve the rest of his/her natural life in the Mississippi Department of Corrections. Defendant shall be eligible for parole."

¶26. This is not a situation where the trial court conducted a proportionality analysis under *Solem v. Helm*, 463 U.S. 277 (1983), and determined that life without parole would be grossly disproportionate to the crime Brownlee committed.[6] This also was not a case

_____

[6] According to the factual basis announced by the State during the guilty plea hearing, Brownlee was living with William Brownlee, Sr., who was "an invalid and was confined to

14

invoking *Miller v. Alabama*, 567 U.S. 460 (2012),[7] where Brownlee was under eighteen years of age at the time of the crime. Instead, the sentence the trial court imposed was the result of an erroneous interpretation of the parole-eligibility statutes.

¶27.     This error was likely the result of the ever-changing legislative enactments concerning parole eligibility.[8] Prior to 2013, Mississippi Code Annotated section 97-3-19 (Rev. 2006) set forth the elements of the crime of murder. The punishment for a defendant convicted of murder was life imprisonment. Since July 1995, that sentence has been without eligibility for parole pursuant to Mississippi Code Annotated section 47-7-3. In 2013, the legislature amended section 97-3-19 to categorize murder as first-degree murder and second-degree murder. The punishment for first-degree murder continued to be life imprisonment, and pursuant to section 47-7-3, that sentence was to be served without eligibility for parole. In 2014, the legislature enacted what became Mississippi Code Annotated section 97-3-2(1) (Rev. 2014), which enumerated offenses classified as "crimes of violence." The offense of murder, including both first-degree and second-degree murder, as provided for the recently amended section 97-3-19, is included in that list. Also in the same 2014 legislation, section

his bed." She went into his bedroom, started a fire, closed the door as she left, and Brownlee, Sr. burned to death.

[7] In *Miller*, the United States Supreme Court declared unconstitutional the imposition of a mandatory life-without-parole sentence for defendants under eighteen at the time of the crime.

[8] Section 47-7-3 has been amended fourteen times since 1995. Miss. Code Ann. § 47-7-3 (Supp. 2024).

47-7-3 was amended to state in subsection (1)(g)(i):[9]

> No person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2, a sex crime or an offense that specifically prohibits parole release, shall be eligible for parole.

Miss. Code Ann. § 47-7-3(1)(g)(i) (Rev. 2014). Further, in the same 2014 legislation, a newly created subsection 97-3-2(2) stated:

> In any felony offense with a maximum sentence of no less than five (5) years, upon conviction, the judge may find and place in the sentencing order, on the record in open court, that the offense, while not listed in subsection (1) of this section, shall be classified as a crime of violence if the facts show that the defendant used physical force, or made a credible attempt or threat of physical force against another person as part of the criminal act. **No person convicted of a crime of violence listed in this section is eligible for parole or for early release from the custody of the Department of Corrections until the person has served at least fifty percent (50%) of the sentence imposed by the court.**

Miss. Code Ann. § 97-3-2(2) (Rev. 2014) (emphasis added). Some questions later arose as to whether crimes of violence *were not* eligible for parole or whether crimes of violence *were* eligible for parole after the offender had served fifty percent of the sentence imposed.

¶28. In a direct appeal from a conviction for felony fleeing in violation of Mississippi Code Annotated section 97-9-72(2) (Rev. 2014), in *Fogleman v. State*, 283 So. 3d 685, 691-92 (¶¶22-24) (Miss. 2019), the supreme court reversed this Court's decision and addressed what some thought was a conflict in the statutes set forth above:

> Contrary to the clear language of this provision, the Court of Appeals concluded that Fogleman's conviction for a "crime of violence" eliminated his parole eligibility altogether. *Fogleman* [*v. State*], 276 So. 3d [1213,] 1216-17

_____

[9] Persons convicted of a murder that occurred between July 1, 1995, and July 1, 2014, continued to be ineligible for parole under a different subsection. Miss. Code Ann. § 47-7-3(1)(d).

[(Miss. Ct. App. 2018)]. The appellate court reached its decision by looking to another parole-eligibility statute, Mississippi Code Section 47-7-3(1)(g)(i) (Rev. 2014), which provides "[n]o person who . . . is convicted of a crime of violence pursuant to Section 97-3-2 . . . shall be eligible for parole." While Sections 97-3-2(2) and 47-7-3 appear to be in conflict, "[s]tatutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." *Roberts v. Miss. Republican Party State Exec. Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985). We find this directive especially relevant here because the Legislature amended Section 47-7-3(1)(g)(i) to remove parole eligibility for crimes of violence in the very same bill—indeed in the very next section after—it codified Section 97-3-2. *See* 2014 Miss. Laws ch. 457, §§ 39-40 (H.B. 585).

Instead of just declaring that Section 43-7-3(1)(g)(i)'s parole-elimination provision trumps, our law requires us, if possible, to harmonize these two parole-related provisions so as not to render the last sentence of Section 97-3-2(2) meaningless. We find Section 43-7-3(1)(g)(i) does apply to the per se crimes of violence listed in subsection (1) of Section 97-3-2 because Section 97-3-2(1) is silent about parole eligibility. But Section 43-7-3(1)(g)(i) does not apply to the trial court's discretionary designation of a "crime of violence" under subsection (2) of Section 97-3-2. Rather, subsection (2)'s specific parole-and-early-release-eligibility provision controls.

Fogleman's conviction was designated by the trial court as a crime of violence under Section 97-3-2(2). So he is not eligible for parole or early release until he has served 50 percent of his five-year sentence.

The supreme court made it clear that the "50%" language in section 97-3-2(2) only applied to *crimes designated as crimes of violence by the trial court* as authorized by that subsection.

The court specifically found that the "50%" language did not apply to the *crimes the legislature designated as crimes of violence* in section 97-3-2(1), which remained ineligible for parole.

¶29.    Less than two months later, the supreme court addressed the question again in a direct appeal from a conviction from the same circuit court district as the case at bar. In *Bowman v. State*, 283 So. 3d 154 (Miss. 2019), the defendant claimed that because the trial judge

17

mistakenly believed his conviction of burglary of a dwelling listed as a crime of violence in section 97-3-2(1) made him parole eligible after serving fifty percent of his sentence, he would have to serve more than he otherwise would have had to serve. *Id*. at 168 (¶56). The trial judge sentenced Bowman to twenty years in custody, suspended ten years, and placed him on five years of post-release supervision. *Id*. at 160 (¶15). The judge specifically stated that Bowman would serve only half of that sentence. *Id*. at 168 n.13 (¶56). The supreme court noted:

> Bowman next argues the trial judge mistakenly applied Section 97-3-2(2), which deals with non-enumerated crimes of violence and parole eligibility. He claims he has to serve more time in prison than he otherwise would have, because the judge thought Bowman would be eligible for parole after serving 50 percent or five years. Indeed, this belief was prominent when the judge crafted Bowman's sentence. There is merit to Bowman's argument.
>
> As this Court recognized in *Fogleman*, there is some confusion over the interplay between Sections 97-3-2(1) and (2) and 47-7-3(1)(g)(i). Section 97-3-2(1) lists enumerated crimes of violence, and burglary of a dwelling house is one of those listed crimes.

*Id*. at 168-69 (¶¶56-57) (footnote omitted). In finding that Bowman was not eligible for parole for his conviction of burglary of a dwelling, the supreme court explained the confusion and the sentence imposed:

> While this interpretation of Section 97-3-2 is understandable, under this Court's decision in *Fogleman*, it is also erroneous. Because burglary of a dwelling house is an enumerated crime of violence under Section 97-3-2(1), Bowman cannot serve half of his ten-year sentence before being eligible for parole as the judge believed. Instead, Bowman will have to serve the entirety of his ten-year sentence. *See Fogleman*, [283 So. 3d at 691 (¶22)].
>
> Much like the Court of Appeals, the judge here did not have the benefit of this Court's decision in *Fogleman*. In light of the confusion surrounding crimes of violence and parole eligibility, we reverse Bowman's sentence and remand his

18

conviction to the trial court for resentencing. This allows the judge to fashion what he believes to be an appropriate sentence, consistent with this Court's opinion in *Fogleman*.

*Id*. at 169-70 (¶¶59-60). In the present case, Brownlee was sentenced on April 7, 2020, a matter of months after the decisions in *Fogleman* and *Bowman* were handed down. Clearly, pursuant to the supreme court's interpretation of the statutes in these cases, the trial court did not have the authority to sentence Brownlee to life imprisonment *with eligibility for parole*.

¶30.    On April 12, 2022, after she had been in the custody of MDOC for some time, Brownlee requested that a parole-eligibility date be added to her time sheet. She made this request through MDOC's Administrative Remedy Program (ARP). Pursuant to Mississippi Code Annotated section 47-7-3.1(3) (Supp. 2021), MDOC is required to give all parole-eligible inmates a case plan. Under that statute, MDOC should have completed Brownlee's case plan, if she was parole eligible, by January 1, 2022. Brownlee obviously had not been given a case plan or parole-eligibility date before January 1, 2022. Her ARP request shortly followed.

¶31.    Through the ARP process, MDOC determined:

> Your file has been reviewed, your crime of first degree murder is not a parole eligible sentence. Although your order states with the possibility of parole, those crimes committed on or after June 30, 1995 are prohibit [sic] parole release.

After Brownlee exhausted her administrative remedies, she sought judicial review of MDOC's decision. The Rankin County Circuit Court affirmed MDOC's decision that Brownlee is not eligible for parole. Brownlee appealed.

¶32.    On appeal, we must decide whether MDOC correctly interpreted and applied the

parole statutes and cases interpreting those statutes in deciding whether Brownlee was parole eligible. In another case where an inmate sought parole eligibility through the ARP process after a murder conviction, this Court stated in *Neal v. Cain*, 401 So. 3d 187, 191 (¶¶8-9) (Miss. Ct. App. 2024):

> "This Court reviews a circuit court's decision regarding an agency's actions using the same standard of review as trial courts." *Wilson v. Miss. Dep't of Corr.*, 358 So. 3d 381, 384 (¶6) (Miss. Ct. App. 2023) (quoting *Hooghe v. Shaw*, 332 So. 3d 341, 345 (¶12) (Miss. Ct. App. 2021)). "We look to see whether the circuit court exceeded its authority, bearing in mind that a rebuttable presumption exists in favor of the action of the agency, and the burden of proof is on the party challenging the agency's action." *Id*. "The court examines whether the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the aggrieved party." *Id*.
>
> Our review of an agency's decision is limited to the record and the agency's findings. *Smith v. State*, 293 So. 3d 238, 241 (¶12) (Miss. 2020). "The reviewing court cannot substitute its judgment for that of the agency or reweigh the facts of the case." *Id*. "An administrative agency's interpretation of a statute governing the agency's operation is a matter of law subject to de novo review." *Id*. at (¶13) (quoting *Nissan N. Am. Inc. v. Tillman*, 273 So. 3d 710, 714 (¶11) (Miss. 2019)).

In affirming MDOC's interpretation of the parole statutes and its decision that Neal was not eligible for parole because he was convicted of murder, this Court explained:

> MDOC's ARP decision was supported by substantial evidence, was not arbitrary or capricious, was within MDOC's authority, and did not violate Neal's statutory or constitutional rights

*Id*. at 194 (¶23). I would find the same thing is true in Brownlee's case and affirm the decisions of the circuit court and MDOC.

¶33. Because the trial court's order purports to grant Brownlee parole eligibility, the

20

majority finds that based upon *Conley III*, MDOC must give Brownlee a parole date unless a court declares that portion of Brownlee's sentencing order is surplusage. I would find that the language the majority referred to in *Conley III* does not dictate the disposition of the present case. In *Conley III*, before the inmate sought a parole date through MDOC's ARP process, the supreme court had already decided, on direct appeal, that his sentence of life without parole eligibility was a legal sentence. *Conley I*, 790 So. 2d at 804 (¶123); *see Conley III*, 150 So. 3d at 704 (¶5). Then, in response to the inmate's ARP request, MDOC followed the sentencing order, as approved by the supreme court, and denied his request for a parole date. *Conley II*, 150 So. 3d at 716 (¶4). The language the majority relies on appears to be *dicta*.[10] It is unclear what more MDOC should have done, if anything, before denying Conley's ARP request.

¶34.    In any event, to the extent *Conley III* requires a court order based upon the applicable statutes and cases, I would find that the language in Brownlee's sentencing order purporting to grant her parole eligibility is without statutory authority, is void, and should be treated as surplusage. A long line of cases deals with sentencing orders where a circuit court has

---

[10] The majority takes issue with the characterization of this portion of *Conley III* as *dicta*. However, in *Smith v. Normand Children Diversified Class Trust*, 122 So. 3d 1234, 1237 (¶5) (Miss. Ct. App. 2013), this Court defined "dicta" by stating: "Dicta are statements 'not necessary to the court's ruling.' *McKibben v. City of Jackson*, 193 So. 2d 741, 745 (Miss. 1967)." Because the supreme court had already ruled upon the legality of Conley's sentence before he filed the ARP request, this language was not necessary to the court's ruling in *Conley III*. Further, in *Lee v. Memorial Hospital at Gulfport*, 999 So. 2d 1263, 1266 n.3 (Miss. 2008), the supreme court confirmed, "'This Court has held on more than one occasion that a statement which qualifies as dictum does not have a binding effect.' *Collins v. McMurry*, 539 So. 2d 127, 130-31 (Miss. 1989) (citations omitted)."

exceeded its statutory authority in imposing a sentence.[11]

¶35.    There was a time when circuit courts did not have the authority to suspend a portion of the sentence it imposed.  Concerning the portion of the sentencing order that purported to suspend a part of the sentence, the supreme court stated in *Steadman v. State*, 204 Miss. 322, 327-28, 37 So. 2d 357, 359 (1948):

> **The suspension was void**, and he could have been arrested immediately, or later, by the sheriff without any order of the court and compelled to serve the suspended sentence.

(Emphasis added). A more recent case, *In re Moore*, 722 So. 2d 465 (Miss. 1998), cited *Steadman* as authority. In *Moore*, the State sought extraordinary relief from the supreme court, to vacate a circuit court's order that released an inmate from MDOC's custody more than a year after the sentencing order was entered. *Id*. at 466 (¶5). After considering the inmate's due process claims, the supreme court ruled that the order was not supported by legal authority and was **void**:

> This Court concludes that Judge Frank Russell released Robert Daniel Parham **without any legal authority** to do so. As such the orders of the Monroe County Circuit Court of July 19, 1994, and August 5, 1994, which ordered Parham's release, **are declared void and are hereby vacated by this Court**. This Court further orders that Robert Daniel Parham be immediately returned to the custody of the MDOC.

*Id*. at 472 (¶28) (emphasis added). And in *Robinson v. State*, 585 So. 2d 757, 759 (Miss. 1991), where the circuit court had sentenced a defendant who had a prior felony conviction

_____

[11] As noted by the majority, the cases cited below were decided before *Conley III*; however, *Conley III* did not overrule any of these cases. Further, the appellate decisions in these cases may well have been instructive to MDOC on how to resolve a conflict between a sentencing order and a statute that is MDOC's duty to administer.

22

to a suspended sentence and probation, the supreme court stated:

> There was no misleading Judge Gardner in this case. He knew that Robinson had been convicted of a felony prior to his suspending the sentence and placing Robinson on probation—**an act of judicial nullification**. The sentence was, therefore, clearly erroneous. *See Denton v. Maples*, 394 So. 2d 895, 897 (Miss. 1981); *Royalty v. McAdory*, 278 So. 2d 464, 467 (Miss. 1973); *Freeman v. State*, 220 Miss. 777, 72 So. 2d 139 (1954); *Steadman v. State*, 204 Miss. 322, 37 So. 2d 357 (1948); *Fuller v. State*, 100 Miss. 811, 57 So. 806 (1912).

> Clearly, § 47-7-33 does not permit suspension of sentence and probation to a defendant with a prior felony conviction. **Robinson's suspended sentence and probation was without authority and, therefore, invalid**.

(Emphasis added).

¶36.    Further, as noted above, the legislature determines what offenses are parole eligible and which are not parole eligible. The supreme court explained in *Mitchell v. State*, 561 So. 2d 1037, 1039 (Miss. 1990):

> The fact that Mitchell pled guilty to armed robbery in exchange for a seven year sentence with the Mississippi Department of Corrections did not broaden the circuit court's sentencing authority. It is still statutorily limited. Mississippi Code Annotated § 99-15-25(1) (1972), as Amended, provides that "[u]pon the entering of such plea of guilty, **the judge shall have the power and authority to impose any lawful and proper sentence** upon the defendant in vacation just as though the plea was entered and the sentence imposed during a regular term of the court." **And eligibility for parole is solely a matter under the jurisdiction of the state probation and parole board, which must follow the dictates of § 47-7-3.** In the case at bar, the applicable parole statute did not restrict Mitchell's parole rights. **Therefore, assuming a portion of the sentence mandated "without parole," it lacks any legal effect and is deleted by this Court.** *Ard v. State*, 403 So. 2d 875 (Miss. 1981); *Hill v. State*, 388 So. 2d 143 (Miss. 1980).

(Emphasis added). And in *Hinton v. State*, 947 So. 2d 979, 981 (¶¶6-7) (Miss. Ct. App. 2006), this Court noted:

> Hinton is correct that Section 47-7-3 gives the parole board exclusive

23

responsibility to grant or deny parole, and parole is not part of the court's sentencing power. *Mitchell v. State*, 561 So. 2d 1037, 1039 (Miss. 1990). **Any such language included in a sentencing order is mere surplusage and will not render the sentence illegal.** *Gardner v. State*, 514 So. 2d 292, 294 (Miss. 1987); *Norwood v. State*, 846 So. 2d 1048, 1050 (¶3) (Miss. Ct. App. 2003).

. . . **It is not the trial judge's sentence which prohibits the parole board from considering Hinton for parole. It is the legislature, who acted within their constitutional power**.

(Emphasis added). Also in *Norwood*, 846 So. 2d at 1053 (¶¶15-16), this Court ruled:

[W]e address Norwood's contention that the trial court was without authority to include the "without hope of parole or probation" provision in the sentencing order.

We agree with Norwood that **the trial court should not have included the restrictive language in the sentencing order since the statute which prohibits the grant of parole to persons convicted of a crime after June 30, 1995,** (Mississippi Code Annotated section 47-7-3(1)(g) (Rev.2000)) **is a mandate to the parole board and not to the courts**. *Gardner v. State*, 514 So. 2d 292, 294 (Miss. 1987). **Inclusion of such restrictive language in the sentencing order is unnecessary and surplusage**. *Id*.

(Emphasis added).

¶37. I would find that the trial court did not have authority to grant Brownlee parole eligibility, as that is solely within the province of the legislature. I would further find that the portion of the sentencing order that purports to grant Brownlee parole eligibility is void, surplusage, and not binding on MDOC as it administers its statutory duties. Accordingly, I would affirm MDOC's refusal to grant Brownlee a parole eligibility date through its ARP process and the circuit court's decision affirming MDOC's ARP decision.

**LAWRENCE AND WEDDLE, JJ., JOIN THIS OPINION.**